450 So.2d 213 (1984)
DADE COUNTY, Petitioner,
v.
NATIONAL BULK CARRIERS, INC., Respondent.
No. 62862.
Supreme Court of Florida.
March 22, 1984.
Rehearing Denied June 12, 1984.
*214 Robert A. Ginsburg, Dade County Atty., and Eileen Ball Mehta, Asst. County Atty., Miami, for petitioner.
Michael R. Storace of the Law Offices of Michael R. Storace, Coral Gables, for respondent.
ADKINS, Justice.
This case is before the Court for review of the decision of the Third District Court of Appeal which is reported at 419 So.2d 697 (Fla. 3d DCA 1982). This case conflicts with City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953), appeal dismissed, 348 U.S. 906, 75 S.Ct. 292, 99 L.Ed. 711 (1955), and Mailman Development Corp. v. City of Hollywood, 286 So.2d 614 (Fla. 4th DCA 1973), cert. denied, 293 So.2d 717 (Fla.), cert. denied, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).
Respondent, National Bulk Carriers, is the owner of 1,850 acres of property located in Dade County, Florida. The land was previously owned by Seadade Realty, Inc.
In 1962, Seadade sought and obtained from Dade County a rezoning of the property to the IU-3 (Unlimited Manufacturing) classification in order to construct a petroleum refinery. The approval included a conditional permission to excavate canals and a harbor and the entire application was made subject to an agreement that the applicant would not seek a building permit until Dade County had enacted a comprehensive pollution control ordinance. Two years later Seadade Realty voluntarily abandoned its oil refinery project. The county commission subsequently adopted Resolution Z-154-64 on June 16, 1964, which withdrew approval of the oil refinery without affecting the IU-3 zoning or the permission to excavate the canals and harbor.
In the ensuing years no attempt was made by National Bulk Carriers or its predecessor to develop the property in accordance with the approval granted in Resolution Z-154-64. In 1975, however, Dade County adopted its Comprehensive Development Master Plan which designated a portion of the property as "environmentally sensitive" and the remainder as "agriculture and open space." In July of 1979 National Bulk Carriers filed with the Dade County Building and Zoning Department an application for an unusual use permit to excavate a lake on its property and to fill the remainder of the land to the elevation *215 of flood criteria. The county's Department of Environmental Resources Management (DERM) had expressed opposition to the application. Specifically, DERM observed that the filling of the lands located below the mean high water line would be contrary to the objectives of the Biscayne Bay Aquatic Preserve Act, section 258.165, Florida Statutes (1981). DERM also recognized that the project would conflict with the policies of Dade County's Comprehensive Development Master Plan and the Florida State Comprehensive Plan to preserve the land in its natural state.
National Bulk Carriers' application was heard by the zoning appeals board on June 11, 1980, and a motion to approve the application resulted in a tie vote. In accordance with the procedural rules of the zoning appeals board, the application was again presented to the board on June 25, 1980. At that time, a motion to deny the application was adopted. National Bulk Carriers appealed the decision of the zoning board to the board of county commissioners and the matter was heard on September 4, 1980. National Bulk Carriers submitted that the purpose of its application was to make the property suitable for farming. Their experts contended that the marl soil found on the upland portion of the property could be pushed aside while fill material excavated from the proposed lake would be spread throughout the property, raising its elevation to flood criteria. Thereafter, a blanket of the reserved marl would be spread over the artifically elevated land. One expert speculated that the cost of the procedure would fall between $4,000 to $7,000 per acre. The board of county commissioners denied the application with prejudice on September 4, 1980.
In January of 1981 the commission rezoned the property from IU-3 to CU (Interim Use) in order to conform to the Comprehensive Development Master Plan classification as a preservation zone. National Bulk Carriers appealed both the denial of its unusual use application and the approval of the rezoning. On a consolidated appeal, National Bulk Carriers sought judicial review contending that the county's actions constituted a taking of property without compensation. The circuit court upheld the county's action. The court noted that its opinion should not be construed as a denial of National Bulk Carriers' right to raise the taking issue in a separate action. Pursuant to a petition for writ of certiorari, the Third District Court of Appeal held that the circuit court erred in failing to resolve the inverse condemnation issue. The district court remanded the cause for further proceedings pursuant to section 373.617, Florida Statutes (1981), and the remainder of the circuit court's order was affirmed. Discretionary review was then granted by this Court.
Petitioner submits that the district court erred in remanding the cause for a determination on the taking issue because a zoning decision cannot be correct and unconstitutional at the same time. Respondent submits that the action of Dade County should be ruled a taking. However, respondent also seeks reversal of the ruling by the Third District Court of Appeal because it takes the position that the district court should have resolved the taking issue without remand.
In our recent decisions in Albrecht v. State, 444 So.2d 8 (Fla. 1984), and Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982), we recognized the proposition that under certain circumstances a statute or regulation may meet the standards necessary for an exercise of the police powers and authorize a taking. See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). In Albrecht we held that a claim of uncompensated taking constitutes a separate and distinct cause of action from an action challenging the propriety of an agency's action in denying a permit to dredge and fill. We recognized that the determination, judicially or otherwise, that such an action was authorized *216 under the applicable statute does not necessarily also determine that there is no taking. We distinguished between a zoning change or denial on the one hand and a permit denial on the other hand in Key Haven. We explained that "[a] zoning ordinance is, by definition, invalid if it is confiscatory," 427 So.2d at 159, and, consequently, no inverse condemnation would be necessary. On the other hand, as in Key Haven, if the "statute authorizes a permit denial which is confiscatory," id., a separate condemnation proceeding is an appropriate remedy. Under the type of statutory permitting-scheme involved in Key Haven, Albrecht, and Graham v. Estuary, it was contemplated that its application may result in a taking. Such is not the case in the application of a zoning ordinance. To be valid, it must be reasonable. If a zoning ordinance is confiscatory, the relief available is a judicial determination that the ordinance is unenforceable and must be stricken. See City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953), appeal dismissed, 348 U.S. 906, 75 S.Ct. 292, 99 L.Ed. 711 (1955), and Mailman Development Corp. v. City of Hollywood, 286 So.2d 614 (Fla. 4th DCA 1973), cert. denied, 293 So.2d 717 (Fla.), cert. denied, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). See also Kasser v. Dade County, 344 So.2d 928 (Fla. 3d DCA 1977). We hold that this cause should be remanded to the circuit court for a determination of whether the county's action is confiscatory and constitutes a taking without just compensation, in which event the action of the board must be stricken. A denial of rezoning cannot be both reasonable and confiscatory.
We also hold that the district court's application of section 373.617 to the facts of this case was erroneous.
Section 373.617(2) provides a method of judicial review of final action of any agency with respect to a permit. A "permit" is defined to mean "any permit or license required by this chapter." See § 373.617(1)(b). "Agency" is defined to mean "any official, officer, commission, authority, council, committee, department, division, bureau, board, section, or other unit or entity of state government." See § 373.617(1)(a). It is obvious that the legislature intended to apply the provisions of chapter 373 to agencies dealing with water resources. The short title of that chapter is "Florida Water Resources Act of 1972." The limited scope of this legislation was explained in an article appearing in The Florida Bar Journal:
Key operational definitions of "agency" and "permit" limit the court action to state agency decisions involving Chapters 161, 253, 373, 380 and 403, Fla. Stat. Hence, the Department of Natural Resources decisions regarding coastal construction control lines, Trustees of the Internal Improvement Trust Fund decisions regarding dredge and fill permit appeals and sale and lease of state owned lands, Land and Water Adjudicatory Commission and regional water management district decisions regarding water permits, Land and Water Adjudicatory Commission decisions regarding developments of regional impact and areas of critical state concern, and Environmental Regulation Commission decisions regarding pollution control permits are subject to the circuit court action established by the act.
R. Rhodes, Compensating Police Power Takings: Chapter 75-85, Laws of Florida, 52 Fla.B.J. 741, 743 (1978) (footnotes omitted).
The district court has clearly attempted to add to section 373.617 in order to make it cover a situation which is not within the meaning of the legislation. The courts cannot amend or complete acts of the legislature intending to supply relief in instances where the legislature has not provided such relief.
Accordingly, we remand this cause with directions to remand it to the circuit court for proceedings consistent with this opinion.
It is so ordered.
*217 ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.