Claire W. ANTHONY, et al., Plaintiffs-Appellants,

v.

FRANKLIN COUNTY and Willis "Bill" Collins, et al., Defendants-Appellees.

No. 85–3672.

United States Court of Appeals, Eleventh Circuit.

Sept. 15, 1986.

Rehearing and Rehearing En Banc Denied Oct. 23, 1986.

---

Philip J. Padavano, Tallahassee, Fla., for plaintiffs-appellants.

Alfred O. Shuler, Apalachicola, Fla., for defendants-appellees.

Before HILL, Circuit Judge, HENDERSON * and BROWN **, Senior Circuit Judges.

HILL, Circuit Judge:

## FACTS

Appellants are the owners of real property on the Isle de Chien (commonly known as Dog Island), an island located in the Gulf of Mexico, wholly situated within the

---

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

territorial boundaries of Franklin County, Florida. In 1953, the Florida Department of Transportation ("DOT") established a ferry service to operate between the mainland and Dog Island. This ferry service was initiated at the request of Franklin County, on behalf of the developers, to encourage development on Dog Island. The ferry operated on a continuous schedule, with the capacity to carry motor vehicles, construction materials and other items of personal property. As anticipated, ferry service did facilitate real estate development: County records show three hundred eighty-three property owners on Dog Island, sixteen of whom are entitled to a homestead exemption. Approximately one hundred cottages, primarily used for vacation and leisure, were constructed on the island. Appellants allege that they purchased their property with the expectation of continued ferry service.

The ferry was operated by a number of public and private organizations, most recently by Franklin County. On July 17, 1979, the DOT conveyed the ferryboat to the county and agreed to subsidize its operation out of the "80% seventh cent gas tax." On September 1, 1981, the county passed a resolution to discontinue the ferry service for economic reasons; county-operated ferry service actually terminated in April, 1982. The Dog Island Conservation District, a public body, currently operates a limited passenger ferry service. There are substantial differences between the former and present services. First, the Conservation District replaced the original ferryboat with a small motor boat capable of carrying six passengers. In addition, the ferry operates on a less frequent, weekend-only, basis. Those who wish to transport automobiles or other large items to and from Dog Island must charter a landing craft. As a result, it is prohibitively expensive for appellants to take their cars to and from

the island on a regular basis. Although property values on Dog Island have continued to increase since Franklin County terminated ferry service, some owners' rental income has decreased due to the inconvenience of travelling to and from the mainland.

On August 31, 1983, appellants filed suit against Franklin County and the County Commissioners under 42 U.S.C. § 1983. The complaint alleged that the termination of county-operated ferry service constituted a taking of appellants' property without substantive due process and violated equal protection by subjecting them to a discriminatory property tax system. Appellants also included a pendent state inverse condemnation claim. The essence of appellant's section 1983 claims is that: (1) the ferry service was the functional equivalent of a county road and, therefore, its discontinuance constitutes a deprivation of access; and (2) the county has engaged in an irrational scheme of ad valorem taxation by continuing to collect property taxes for governmental services which cannot be used without a public transportation system.

On June 27, 1985, after extensive discovery, appellants moved for partial summary judgment on the issue of liability. Franklin County responded and filed a cross-motion for summary judgment. The district court dismissed the case without prejudice because appellants had an adequate remedy under state law.

## DISCUSSION

### Adequate State Remedies

■ Appellants' principal claim is that the County deprived them of access to their property, constituting a taking "without substantive due process" in violation of the fifth amendment.[1] In *Williamson County Regional Planning Commission v. Ham-*

---

1. The fifth amendment protects individuals only from the federal government's actions. The just compensation clause, however, has been incorporated into the fourteenth amendment to protect against state "takings." *See e.g., Fountain v. Metropolitan Atlanta Rapid Transit Authority,*

678 F.2d 1038, 1040 n. 4 (11th Cir.1982). We construe appellants' reference to substantive due process as intended to base their claim as based on both the fifth and fourteenth amendments.

*ilton Bank,* —— U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court held that a property owner must exhaust state procedures for obtaining just compensation, including resort to a state inverse condemnation action, before bringing a "taking" claim under 42 U.S.C. § 1983. *Id.* 105 S.Ct. at 3121–22. The Court reasoned that the fifth amendment does not prohibit takings, only uncompensated takings. "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.* (footnote omitted). Thus, "if a State provides an adequate remedy for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 3121. Florida law provides compensation for deprivation or impairment of the right of access, *Anhoco Corp. v. Dade County,* 144 So.2d 793 (Fla.1962), which may be enforced in an action for inverse condemnation, *see, e.g., Pinellas County v. Austin,* 323 So.2d 6 (Fla.Dist.Ct. App.1975). Appellants have not shown that the Florida procedures were unavailable or inadequate; until they have utilized those procedures, their taking claim is premature.

### Substantive Due Process

Appellants' complaint specifically alleged that the County's decision to discontinue ferry service to Dog Island denied them substantive due process and requested that the court affirmatively require Franklin County to reinstate the ferry service.[2]

[U]nder [the substantive due process] theory government regulation does not effect a taking for which the Fifth Amendment requires just compensation; instead, regulation that goes so far that it has the same effect as a taking by eminent domain is an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment. Should the Government wish to accomplish the goals of such regulation, it must proceed through the exercise of its eminent domain power, and, of course, pay just compensation for any property taken. The remedy for a regulation that goes too far, under the due process theory, is not "just compensation," but invalidation of the regulation, and if authorized and appropriate, actual damages.

*Williamson County,* 105 S.Ct. at 3122 (footnote omitted).

■■■ The substantive due process doctrine proscribes "deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis." *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982). Economic and social legislation is presumed valid if it is rationally related to a legitimate state interest. *See, e.g., Village of Belle Terre v. Boraas,* 416 U.S. 1, 4–9, 94 S.Ct. 1536, 1538–41, 39 L.Ed.2d 797 (1974). In this case, we conclude that termination of county-operated ferry service did not deprive appellants of a property interest. Therefore, we need not examine Franklin County's actions.

■■■ The substantive due process claim in this case presents a novel interpretation of the denial of right of access. Appellants cite several Florida statutes to support their assertion that Florida law classifies a ferry as a "road" which Franklin County has a duty to maintain.[3] Therefore, termi-

---

**2.** It is unclear whether appellants requested injunctive relief as part of their taking claim or whether they intended a separate substantive due process claim attacking the county's action. Because the requested relief would effectively invalidate the decision to terminate ferry service, we will analyze this claim under substantive due process standards.

**3.** In addition, appellants cite several cases from other jurisdictions that also classify ferries as roads. Appellants contend that a ferry " 'is simply a movable portion of a highway where it crosses a stream.' " *Wilmington*

nating ferry service was equivalent to closing a road or street. Since this ferry service was the only "road" between the mainland and Dog Island, its termination completely deprived them of access to their property or, at a minimum, substantially diminished access. Appellants compare this deprivation to the cases where the government has vacated the only viable street adjacent to a mainland piece of property.

Upon first impression, appellants' argument would appear to present this court with a perplexing dilemma: either require the county to provide perpetual ferry service to Dog Island or deprive appellants of access to their property. When, long ago, Chief Justice Bleckley of the Supreme Court of Georgia was confronted with an apparent paradox, he observed, "When the right point of view is discovered, the problem is more than half solved." *Ellison v. Georgia Railroad Co.*, 87 Ga. 691, 706–07, 13 S.E. 809 (1891). The right point of view is this: the county's action has not affected appellants' right of access to their property in any way, it merely ceased to transport them, at public expense, to and from their property. This is not a case where the government inflicted harm, but merely one where a benefit, once conferred, has been withdrawn. Property on Dog Island obviously was made more valuable by the existence of public conveyance to and from the island. This means of transportation may have increased the value of appellants' property, but its absence is not a deprivation of access.

More importantly, this is not a case in which access to property was cut off or even impaired. Appellants' "road closing" analogy fails upon consideration of the principle underlying the right of access cases. Property ownership includes two access-related rights: "the right to pass to or from the public way immediately adjacent to the land" and "the right to go

somewhere once the owner is upon the abutting road—to have access to the system of public roads." Stoebuck, *The Property Right of Access Versus the Power of Eminent Domain*, 47 Tex.L.Rev. 733, 735 (1969). The cases cited by appellant contain implicit findings that government action has made it impossible or substantially more difficult for owners to reach their property from the public thoroughfares without trespassing. *See, e.g., Pinellas County v. Austin*, 323 So.2d at 8 (title to vacated street reverted to adjacent property owners); *State v. Stubbs*, 285 So.2d 1, 2–3 (Fla.1973) (property placed in cul-de-sac). The County's termination of public ferry service does not place appellants in such a position.

■ The distinction between this case, even if we accept appellants' claim that a ferry is a road, and the traditional road-closing case is the nature of appellants' property. It is true that appellants' property is surrounded by open water, making it more inconvenient to reach than most property. That is the way it was long before the county was formed and that is the way it is now. In the traditional right of access case, however, the government owns the adjacent street or highway and can vacate it, preventing access by any means. Appellants do not contend that Franklin County, or any other actor, impedes access to their property, which is freely obtainable over the waters surrounding the island. The county never owned the Gulf waters; it has not obstructed the waterway nor prohibited navigation and appellants remain free to travel across the water to their property. Franklin County's action did not deprive appellants of access to their property, only one means of availing themselves of the unobstructed access: county-provided ferry service. The plight in which appellants claim to find them-

*Shipyard, Inc. v. North Carolina State Highway Comm.*, 6 N.C.App. 649, 171 S.E.2d 222, 226 (1969). We note, however, that merely because the Florida legislature treats ferries

as if they were roads in authorizing the use of public funds for maintenance purposes does not define a ferry as a road in the constitutional sense of the right of access.

selves has not been produced by the county but by nature itself.[4]

Given unimpeded access, appellants' contention boils down to an assertion that the county is required to provide public conveyance for those who live on this particular property. (See Appellants' Br. at 11–12). Municipalities, counties and other governmental agencies may choose to provide mechanical conveyances along streets and roadways. Nevertheless, it can hardly be said that the absence of a bus, subway or even a ferry is a deprivation of access. This loss of an economic benefit is analogous to the cases where businesses assert property rights to adjacent parking spaces or traffic flow. The Florida courts have held that neither is a compensable interest. *See, e.g., City of Orlando v. Cullom,* 400 So.2d 513, 516 (Fla.Dist.Ct.App.), *pet. denied* 411 So.2d 381 (Fla.1981). Likewise, appellants have not cited any authority which finds a property interest in continued ferry service or other public conveyance.

It is not asserted, and indeed the contrary appears, that appellants would not be allowed to operate any safe and seaworthy vessel to convey themselves, their families, friends and property to and from Dog Island. Naturally, appellants would rather have this conveyance provided by the taxpayers, but it can hardly be said that Franklin County's election not to give the Dog Island property owners a "free ride" is the denial of any fundamental right derived from the Constitution. Therefore, we are unwilling to find that the County's decision to discontinue ferry service violated substantive due process.

### Equal Protection

Although it had earlier held that appellants' equal protection claim was sufficient to state a cause of action, the district court did not specifically address it in the order of dismissal. Appellants claim that the county's real property tax scheme requires them to pay for public services they do not receive. They assert this disparate provision of services violates equal protection because it has no rational basis, citing *Weissinger v. White,* 733 F.2d 802 (11th Cir.1984) (geographical ad valorem tax differences); *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1184–86 (11th Cir. 1983) (racial discrimination in provision of municipal services); *Levy v. Parker,* 346 F.Supp. 897, 901–03 (E.D.La.1972), *aff'd* 411 U.S. 978, 93 S.Ct. 2266, 36 L.Ed.2d 955 (1973) (three judge panel) (distribution of property tax relief funds).

We first note that the relief appellants requested was not directed toward the tax system, but, like their taking and substantive due process claims, demanded compensation for property devaluation and reinstatement of the ferry service. Inasmuch as this claim is merely another label for the taking and substantive due process claims disposed of above, we find that appellants do not state a cause of action.

Insofar as this claim addresses Franklin County's provision of public services, appellants have not asserted that any particular county service is not available to them as a result of terminating ferry service. Instead, they claim that all public services are inaccessible while they are on Dog Island because they do not have county-operated ferry service. Franklin County does not deprive appellants of access to county services, merely public transportation to reach those services. We therefore find no denial of equal protection.

For the reasons discussed above, the decision of the district court is

AFFIRMED.

---

**4.** It is conceivable that island property owners might be denied access by government action if a governmental body established a military zone, for example a naval base, so that trips to island property within the zone could not be accomplished without violating the laws governing navigation within a military zone. Such is not the case here; appellants may travel unimpeded across the Gulf to their property.