**Herman CORN, Plaintiff-Appellant,**

v.

**CITY OF LAUDERDALE LAKES,**
**Defendant-Appellee.**

No. 85–6024.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1987.

Gary M. Farmer, Ft. Lauderdale, Fla., for plaintiff-appellant.

Jean Freeman Reed, Morgan, Lewis & Bockius, Miami, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges and KEHOE *, District Judge.

* Honorable James W. Kehoe, U.S. District Judge, Southern District of Florida, sitting by designation.

KEHOE, District Judge:

Herman Corn ("Corn") appeals from the dismissal of his action brought pursuant to Title 42, United States Code, Section 1983, on the grounds the District Court misapplied *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), to the facts of his case. A careful reading of the mandate of *Williamson County* in light of prevailing Florida law leads this Court to conclude that Corn's action indeed was erroneously dismissed. Accordingly, we REVERSE and REMAND this case for further proceedings consistent with this decision.[1]

### I. *Procedural History*

The rather extensive background of this action commences on July 12, 1966, when the City of Lauderdale Lakes passed three zoning ordinances impacting on Corn's property, consisting of 261 acres of land in unincorporated Broward County. The ordinances, respectively, annexed Corn's property; applied a variety of zoning classifications to his land; and allowed Corn to construct mini-warehouses in a portion of his property zoned C–IA. After making initial site preparations, Corn began building single-family homes as authorized.

Following approval by the City's Planning and Zoning Board of Corn's site plan for condominiums, the City Council rezoned the multi-family parcels and denied Corn's request for a building permit. Corn then brought suit in state court for an injunction against the rezoning attempt. A final judgment rendered in Corn's favor estopped the City from rezoning the property during the pendency of Corn's ownership of it. Ten years later, in 1976, Corn again successfully sued the City when it refused to issue him a building permit for a shopping center on a portion of his land.

The next year, Corn submitted site plans for the building of a mini-warehouse/shopping center on that portion of his land

zoned C–IA; the plans were approved in May, 1977. However, two months later, the City Council passed three new ordinances which effected a halt on development of Corn's property. Based on this rezoning, the City Council denied approval of Corn's site plans for the land previously zoned C–IA and refused issuance of a building permit.

Corn immediately filed suit in state court seeking issuance of a writ of mandamus, as well as injunctive relief, as to the C–IA parcel. The state court struck the new zoning ordinances as invalid and issued a writ of mandamus requiring the City to approve the site plans and grant a building permit, upon Corn's correction of three technical defects in the plans. On appeal to Florida's Fourth District Court of Appeal, the decision of the trial court was affirmed. *City of Lauderdale Lakes v. Corn,* 427 So.2d 239 (Fla. 4th DCA 1983). Corn then initiated an action in federal district court against the City of Lauderdale Lakes, its former Mayor and various City officials (collectively referred to as "the City"), pursuant to Title 42, United States Code, Section 1983, seeking damages for their violation of his property rights, as guaranteed by the United States Constitution. On October 22, 1985, the District Judge dismissed Corn's action on the ground the Supreme Court's recent decision in *Williamson County* compelled him to do so.

### II. *The Mandate of Williamson County*

In *Williamson County,* the Supreme Court of the United States held that a Section 1983 claim for money damages stemming from a regulatory taking of property in violation of federal constitutional rights is not ripe for review on the merits until the Plaintiff demonstrates, first, that a final decision by the relevant authority regarding application of the regulation to the subject property has been

---

1. Although the City urges this Court to consider the defenses of res judicata and tolling of the statute of limitations as alternative bases on which to affirm the trial judge's dismissal of the action against it, we decline to do so, remanding instead for full development of these and any other remaining pre-trial issues.

made, i.e., the "initial decision-maker has reached a definitive position on the issue that inflicts an actual, concrete injury," 473 U.S. at 193, 105 S.Ct. at 3120; and second, that no adequate state remedy, such as inverse condemnation, is available to redress the injury occasioned by the final decision. *Id.* at 196–97, 105 S.Ct. at 3122. The rationale of the Court is that, absent the state's denial to a property owner of just compensation, there can be no cognizable harm to any federal constitutional right. 473 U.S. at 194 n. 13, 105 S.Ct. at 3121 n. 13 ("The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.").[2]

■■■ We note at the outset that there is no issue the first prong of *Williamson County*'s ripeness test has been satisfied. Finality is manifested by a showing that there is no beneficial use to which the property may be put, as determined, for instance, by the request and denial of a variance from application of the regulation. *Id.* at 191–92 n. 12, 105 S.Ct. at 3120 n. 12. Since the subject ordinances called for a complete moratorium on Corn's development of his property, any request for a variance would plainly have been futile.

Accordingly, this Court finds, as the City has itself conceded,[3] that the zoning decision upon which Corn bases his present claim under Section 1983 was a final one within the meaning of *Williamson County*.

The remaining dispute centers on fulfillment of *Williamson County*'s second prong: whether, in fact, there exists an available and adequate state remedy to compensate Corn for his loss. In *Williamson County*, the Supreme Court specifically noted that the appellant could, pursuant to Tennessee statute, bring an action for inverse condemnation in Tennessee court, the relevant state forum, and therefore had an adequate, available state remedy.[4] *Id.* at 196–97, 105 S.Ct. at 3122. Although the Court did not expressly identify inverse condemnation as the *only* state remedy which would be adequate under the circumstances, the following statement appearing in the opinion supports such a construction:

> Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature.

*Id.* Nevertheless, the Court did leave open the possibility that actual damages for a

---

**2.** The appellant in *Williamson County* had challenged the zoning ordinance as invalid on two theories: First, he argued it violated the Fifth Amendment's Just Compensation Clause, as applied to the states through the Fourteenth Amendment; alternatively, he claimed the regulation was a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Because the Court found the action was not ripe for review, it did not reach the merits of the appellant's challenges or decide whether a confiscatory zoning regulation—a "taking"—is more appropriately considered a violation of the Due Process or the Just Compensation Clause. Nevertheless, in holding that the claim was premature under either theory, *id.* at 199–201, 105 S.Ct. at 3124, the Supreme Court implicitly ruled that the same ripeness test must be applied to both claims.

**3.** In its brief, the City has indicated that although the ordinances imposed a moratorium on development of Corn's land, the ban was a temporary one which arguably did not restrict all uses of all of Corn's property. However, at oral argument, in response to a direct question

by the Court as to whether Corn failed to pursue the variances available to him, counsel for the City stated that "there is no question" that Corn could not have sought any additional variances in view of the City's ban on all building by him; the City went on to concede that it had not raised the finality issue in the *Williamson County* sense and, indeed, could not do so, since the challenge was to the validity of the ordinances themselves.

**4.** The Supreme Court of the United States has clarified the relationship between the power of eminent domain and an action seeking inverse condemnation:

> Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property ... [I]nverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." [citation omitted]

*Agins v. City of Tiburon,* 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 2140 n. 2, 65 L.Ed.2d 106 (1980).

due process violation caused by a regulation that "goes too far," might provide, "where authorized and appropriate," a theory of recovery alternative to just compensation recoverable pursuant to a claim for inverse condemnation. *Id.*[5] Echoing that theory, the City argues that an action for monetary damages arising from a violation of due process, as guaranteed by the Florida Constitution, is available. It further argues an action in trespass is available to Corn. Absent Corn's unsuccessful pursuit of any of these procedures, the City contends his present action is premature. Because we conclude that Florida recognizes none of these theories of recovery for claims brought challenging zoning ordinances, we reject the City's argument, as well as its apparent adoption by the District Court.

### III. *Florida Law*

In *Dade County v. National Bulk Carriers, Inc.,* 450 So.2d 213 (Fla.1984), the Florida Supreme Court ruled that where a zoning ordinance is confiscatory, an action for inverse condemnation is "not necessary," *id.* at 216, and relief may be obtained by instituting a suit to declare the ordinance invalid and to enjoin its enforcement. Implicit in the holding of the Court, although not expressly set forth, is the additional determination that such equitable relief is the exclusive remedy available to a property owner injured by virtue of a confiscatory zoning regulation. This interpretation, supported by both the language and rationale of the Court, appears clearly to limit the "available" relief based on the nature of zoning itself:

We distinguished between a zoning change or denial on the one hand and a permit denial on the other hand in *Key Haven.* We explained that "[a] zoning ordinance is, by definition, *invalid if it is*

confiscatory," 427 So.2d [153] at 159 [Fla.1982], and, consequently, no inverse condemnation would be necessary. On the other hand, as in *Key Haven,* if the "statute authorizes a permit denial which is confiscatory," *id.,* a separate condemnation proceeding is an appropriate remedy. Under the type of statutory permitting-scheme involved in *Key Haven, Albrecht, [v. State,* 444 So.2d 8 (Fla.1984)], and *Graham v. Estuary [Properties, Inc.,* 399 So.2d 1374 (Fla.1981)], it was contemplated that its application may resultin a taking. Such is not the case in the application of a zoning ordinance. To be valid, it must be reasonable. If a zoning ordinance is confiscatory, the relief available is a judicial determination that the ordinance is unenforceable and must be stricken. *See City of Miami Beach v. Lachman,* 71 So.2d 148 (Fla. 1953), *appeal dismissed,* 348 U.S. 906, 75 S.Ct. 292, 99 L.Ed. 711 (1955), and *Mailman Development Corp. v. City of Hollywood,* 286 So ˆ 614 (Fla. 4th DCA 1973, *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). *See also Kasser v. Dade County,* 344 So.2d 928 (Fla. 3d DCA 1977). We hold that this cause should be remanded to the circuit court for a determination of whether the county's action is confiscatory and constitutes a taking without just compensation, in which event the action of the board must be stricken. A denial of rezoning cannot be both reasonable and confiscatory.

*Id.* at 216.

It would appear that underlying the Court's ruling is the premise that because zoning is a function of the police power, monetary damages are not available as just compensation for a taking of property pursuant to the power of eminent domain.[6]

---

5. The Supreme Court has elsewhere appeared to recognize that a zoning measure amounting to excessive use of the police power may be invalidated as a violation of due process. *See Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (in which a zoning regulation was attacked, albeit unsuccessfully, on due process grounds). *Cf. Block v. Hirsh,* 256 U.S. 135, 136, 41 S.Ct. 458, 460, 65 L.Ed. 865 (1921) ("[J]ust as there comes a point at which

the police power ceases and leaves only that of eminent domain, it may be conceded that regulations of the present sort [rent statute] pressed to a certain height might amount to a taking without due process of law.")

6. While the Court indicated the statutory permitting scheme in Florida likewise arises under the police power, the grant or denial of a permit is pursuant to a statute which "contemplated

Although the Court did not expressly articulate this rationale, it supported its holding through reliance on an appellate decision which had done so:

> [T]here is a clear distinction between the appropriation of private property for public use in the exercise of the power of eminent domain, and the regulation of the use of property under the police power exercised to promote the health, morals and safety of the community ... We hold the police power does not entitle the property owner to seek compensation for the taking of the property through inverse condemnation ... If the zoning ordinance as applied to the property is arbitrary, unreasonable, discriminatory or confiscatory ... the relief available to the property owner is a judicial determination that the ordinance is either invalid, or unenforceable as pertains to plaintiff's property.

*Mailman Development Corp. v. City of Hollywood,* 286 So.2d 614, 615 (Fla. 4th DCA 1973), *cert. denied,* 293 So.2d 717 (Fla.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).[7]

In a concurring opinion in *City of St. Petersburg v. Wall,* 475 So.2d 662 (Fla. 1985), Justice Overton stressed the significance of this distinction. *City of St. Petersburg* dealt with the issue of whether a supersedeas bond may be required of a municipality appealing a lower court decision which had dismissed its petition to condemn the property. While answering the issue in the negative, the Court upheld the right of property owners to seek money damages for injuries sustained as a result of the City's appeal. Justice Overton explained the Court's opposite decision in a zoning case, *City of Lauderdale Lakes v. Corn,* 415 So.2d 1270 (Fla.1982), by emphasizing that because zoning is a function of the police power, the sole remedy for an unreasonable zoning measure is its invalidation; by contrast, condemnation is a function of the power of eminent domain, for which just compensation must be provided. On that basis, he cited *National Bulk Carriers* for the proposition that "when a zoning ordinance is found to be confiscatory, the remedy is avoidance rather than the payment of damages." *City of St. Petersburg,* 475 So.2d at 665.

Florida's Second and Third District Courts of Appeal, the two appellate courts in Florida to have considered the import of *National Bulk Carriers,* are in accord. *See Grady v. Lee County,* 458 So.2d 1211, 1213 (Fla. 2d DCA 1984). ("We read [National Bulk Carriers] as establishing that a zoning change cannot give rise to a cause of action for inverse condemnation."); *Mickins v. City of Opa-Locka,* 11 F.L.W. 2324, 2325 ("... [A] judicial determination or a landowner's concession that the government action was proper, rather than foreclosing a claim of inverse condemnation, is a predicate to it.") *See also Pinellas County v. Ashley,* 464 So.2d 176 (Fla. 2d DCA 1985). Commentary on Florida law is likewise in agreement. *See, e.g.,* Madsen, H. Michael, and DeMeo, Ralph A., *Private Property Rights and Local Government Land Use Control: 42 U.S.C. § 1983 as a Remedy Against Unconstitutional Deprivation of Property,* 1 J. Land Use & Envtl.L. 427, 445 (1985); Siemon, Charles L., *Of Regulatory Takings and Other Myths,* 1 J. Land Use & Envtl.L. 105, 109 (1985).

Despite the uniform interpretation of *National Bulk Carrier* by those courts and commentators having the occasion to interpret it, as well as the City's own acknowl-

---

that its application may result in a taking," *id.,* and therefore presumably invokes the power of eminent domain. Hence, a separate action in inverse condemnation for an uncompensated, although valid, permit decision amounting to a taking, will lie.

**7.** The Supreme Court of the United States has also focused on this distinction in reviewing a California decision mirroring that of *National Bulk Carriers:*

> [The California Supreme Court] held that ... a landowner who challenges the constitutionality of a zoning ordinance may not sue in inverse condemnation and thereby transmute an excessive use of the police power into a lawful taking for which compensation in eminent domain must be paid.

*Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 2140, 65 L.Ed.2d 106 (1980).

edgment that the case "appears" to have eliminated the remedy of inverse condemnation as against a local government for zoning ordinances, the City nevertheless maintains the issue is not resolved. Rather, it asserts that in *Anthony v. Franklin County,* 799 F.2d 681 (11th Cir.1986), this Circuit has, by implication, upheld the viability of an inverse condemnation action, in Florida, in instances of confiscatory zoning. In *Anthony,* the Court dismissed as premature an action brought under Section 1983 challenging Franklin County, Florida's decision to discontinue ferry service which it had previously initiated at the request of certain property owners/developers. The Eleventh Circuit found the property owners/developers had failed to exhaust their existing state remedy: an action in inverse condemnation for the termination of their right of access.

In support of its finding that inverse condemnation is available to remedy a taking stemming from regulation of the right of access to property, the Court relied on a decision of the Florida Supreme Court, *Anhoco Corp. v. Dade County,* 144 So.2d 793 (Fla.1962), and an opinion of the Second District Court of Appeal, *Pinellas County v. Austin,* 323 So.2d 6 (Fla.2d DCA 1975). We note that both these Florida courts have demonstrated how zoning situations are different in that a taking is not contemplated, and a zoning ordinance that is unreasonable and confiscatory is simply invalid. *National Bulk Carriers,* 450 So.2d at 216; *Grady,* 458 So.2d at 1213. These courts have not overruled or retreated from their prior holdings in the right of access context, however, and this Circuit in *Anthony* omitted any mention of *National Bulk Carriers* in its discussion of the availability of inverse condemnation for cases involving the right of access. Thus, we view zoning matters as entirely distinct from the availability of inverse condemnation under Florida law in the context of rights of way for roads and related contexts. *Anthony,* therefore, is not controlling in this case.

In light of the foregoing, we conclude that Florida does not avail a property owner an action to recover just compensation through inverse condemnation for injuries sustained as a result of an unreasonable zoning ordinance later declared invalid. We further find no support for the availability of an action for money damages, based either on trespass or violation of the right of due process, as guaranteed by the Florida Constitution.[8] As discussed above, the cited authorities are persuasive that the remedy of invalidation is an exclusive one pursuant to Florida law, because zoning is a function of the police power rather than the exercise of eminent domain.

Furthermore, in view of the Florida Supreme Court's concern to avoid a "chilling effect" on local governmental land use planning, it is likely that Florida courts would view with particular disfavor a claim for money damages stemming from good faith, albeit confiscatory, zoning activities, on whatever theory. *See City of Lauderdale Lakes,* 415 So.2d at 1272; *Land Use Regulations,* 29 U.C.L.A.L.Rev. 711, 729 (1982). We know of no cases, nor has the City cited any, in which a substantive due process challenge to a zoning regulation, seeking recovery of damages for the constitutional violation, has been successfully raised in the courts of Florida.

Whether, as a matter of federal constitutional law, Florida would be *obligated* to permit Corn to bring suit seeking recovery of money damages under either a due process or inverse condemnation theory is, at present, unresolved. Although the Supreme Court of the United States has been presented with that very issue on four separate occasions, it has each time declined to reach it. *See Williamson County,* 473 U.S. at 185, 105 S.Ct. 3116 ("The Court twice has left this issue undecided. *San Diego Gas & Electric Co. v. San Diego,* [450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981)]; *Agins v. Tiburon,* 447 U.S. 255, 263, 100 S.Ct. 2138, 2143, 65 L.Ed.2d 106 (1980). Once again, we find the question is not properly presented and must be

---

**8.** Article 1, Section 9 of the Florida Constitution provides that "No person shall be deprived of

life, liberty or property without due process of law ..."

left for another day."). *See also Mac-Donald, Sommer & Frates v. Yolo County,* — U.S. —, —, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986). Moreover, although five Justices of the Supreme Court have stated that they would find a state's failure to afford an inverse condemnation remedy in the event of even a temporary regulatory taking to be unconstitutional, they have done so only in dissenting opinions. *See MacDonald, Sommer & Frates,* — U.S. at —, 106 S.Ct. at 2573 (White, J., dissenting, joined by Burger, C.J., and Powell and Rehnquist, JJ.); *San Diego Gas & Electric Co.,* 450 U.S. at 658, 101 S.Ct. at 1307 (Brennan, J., dissenting).[9]

While in *Williamson County* the Supreme Court articulated, without deciding, the Petitioner's claim that the remedy for violation of a property owner's due process rights would include actual damages "where authorized and appropriate," 473 U.S. at 197, 105 S.Ct. at 3122, as we have ruled above, there is no such authorization under Florida law. Rather, the policy of Florida courts appears to be reflected in the following perception:

> It is inevitable that legislation designed to promote the welfare of the public may seriously impair individual rights. It would be a rare occurrence indeed if the zoning of an area did not have financial disadvantages to someone within it. Yet if the police power could be wielded only if no one were affected adversely, the government would be impotent. The welfare of the many would be totally subordinate to the interests of a few.

*Jones v. First Virginia Mortgage and Real Estate Investment Trust,* 399 So.2d 1068, 1073 (Fla. 2d DCA 1981).

Finally, although Corn conceivably could file a claims bill in the state legislature, seeking restitution for his damages, the granting of such relief would be entirely discretionary and therefore not an available, adequate remedy as defined by the Supreme Court in *Williamson County.*

*See City of St. Petersburg,* 475 So.2d at 666 (Ehrlich, J., dissenting).

Accordingly, given the lack of any alternative remedy recognized by Florida courts, we hold Corn's action passes the two-pronged test of *Williamson County,* and is ripe for review on the merits. Dismissal of his action by the District Court must, therefore, be REVERSED.

It is so ORDERED.

---

9. We note that, under Florida law, a litigant may sue in state court for violation of 42 U.S.C. § 1983. *Lloyd v. Page,* 474 So.2d 865 (Fla. 1st DCA 1985). However, the availability of a state forum for vindication of a federal statutory right is obviously not within the contemplation of the Supreme Court's ruling in *Williamson County.*