**A.A. PROFILES, INC.,**
**Plaintiff–Appellant,**

v.

**CITY OF FT. LAUDERDALE, et al.,**
**Defendants–Appellees.**

No. 87–5219.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1988.

Philip M. Cullen, III, Ft. Lauderdale, Fla., for plaintiff-appellant.

Robert H. Schwartz, Ft. Lauderdale, Fla., for defendants-appellees.

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

Before FAY and VANCE, Circuit Judges, and HOFFMAN *, Senior District Judge.

VANCE, Circuit Judge:

A.A. Profiles, Inc. filed suit against the City of Fort Lauderdale and the members of the City Commission, individually and in their official capacity (collectively "the City"), seeking relief under 42 U.S.C. § 1983 [1] for the taking of property without just compensation in violation of the fifth amendment and the deprivation of property without due process in violation of the fourteenth amendment. The case proceeded to a non-jury trial on the issue of liability only. At the conclusion of the plaintiff's case the district court granted a motion for dismissal under Fed.R.Civ.P. 41(b). The district court found no taking and no denial of substantive or procedural due process because appellant did not avail itself of state remedies. We reverse the district court's judgment and remand.

### I.

In 1979 appellant contracted to purchase a twenty-eight acre tract of land in the northwest section of Fort Lauderdale, Florida. The land was zoned M–1, the city's least restrictive industrial and manufacturing classification. Because appellant planned to operate a wood-chipping business on the site, the sales contract was conditioned on the City's approval of the proposed development.

As its first step in the approval process, appellant submitted its proposal to the City's Planning and Zoning Department. The proposal was reviewed and approved initially by several city and county agencies. The proposal submitted to the Planning and Zoning Department provided that a ten foot concrete wall would be built around the entire site. After a public hear-

1. The complaint also sought relief under sections 1981 and 1988, and various common law theories. The section 1981 claim was not pursued.

ing, the Planning and Zoning Department voted to recommend that the City Commission approve the development. The City Commission held a public hearing on December 4, 1979 and unanimously passed Resolution No. 79–440 approving the wood-chipping development planned by appellant.

Having obtained the necessary approvals, appellant completed the purchase of the land, obtained building permits and commenced construction on the land. Thereafter appellant asked the City's Chief Building Inspector if it could begin receiving organic materials in order to relieve some cash flow problems. Although the wall was not completed, the Inspector approved this activity, but warned appellant that if there were any complaints the activity would have to cease. Advertising the development as "Le Dump," appellant began to receive and store materials.

The city began receiving complaints from area residents and on April 22, 1980 the Chief Zoning Inspector ordered the project stopped on the grounds that the plans used for permitting purposes were not the same as the plans approved by the Planning and Zoning Board and the City Commission. At the same time the city manager ordered appellant to cease operations after an inspection had revealed that appellant was operating an illegal dump. Due to the new developments the City Commission held a public hearing on May 6, 1980 to address the growing concerns. At the meeting the City Commission voted to "temporarily suspend" the approval of the development granted by Resolution No. 79–440. The next day a "stop work" order was posted on the project by the Director of Building and Zoning.

At a subsequent hearing on July 1, 1980 the City Commission again addressed the wood-chipping operation and asked the city attorney to draft a resolution to modify the original resolution. The proposed resolution was submitted to the City Commission at a public hearing on July 30, 1980.[2] Once again numerous residents voiced their opposition to the project and hinted that violence might ensue if the City Commission permitted the project to proceed. The discussion ended shortly after appellant announced that it would not proceed with the project until it clarified its legal position with the City.

Although open to reasonable alternatives appellant subsequently requested the City to "cease its attempts to make the continuance of this project unfeasible" and demanded damages for losses. On March 10, 1981 the City Commission unanimously passed Ordinance No. C–81–16 rezoning the site from M–1 to B–3–C, light industrial use. Ultimately, appellant became unable to meet expenses and the lenders foreclosed on appellant's property.

## II.

In order to prevail in an action under 42 U.S.C. § 1983, a plaintiff must show a constitutional violation. *See Rymer v. Douglas County,* 764 F.2d 796, 800 (11th Cir. 1985). Appellants in this case allege that the City's actions violated the constitutional prohibition against taking private property without just compensation and the constitutional requirement of procedural due process.

The fifth amendment provides that "private property [shall not] be taken for public use, without just compensation." The fifth amendment applies to the states through the fourteenth amendment. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* —— U.S. ——, 107 S.Ct. 2378, 2383 n. 4, 96 L.Ed.2d 250 (1987); *Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897); *Fountain v. Metropolitan Atlanta Rapid Transit Auth.,* 678 F.2d 1038, 1040 n. 4 (11th Cir.1982). This amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical*

---

**2.** The proposed resolution required that a buffer zone be established along all sides of the property and that the wall be built before the commencement of operations. In addition, the proposal required that the wood-chipping machine be operational prior to the acceptance of materials.

*Lutheran Church,* 107 S.Ct. at 2385; *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 297 n. 40, 101 S.Ct. 2352, 2371 n. 40, 69 L.Ed.2d 1 (1981).

The Supreme Court has recognized that a taking may occur where a governmental entity exercises its power of eminent domain through formal condemnation proceedings, *see, e.g., Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), or where a governmental entity exercises its police power through regulation which restricts the use of property. *See Nollan v. California Coastal Comm'n,* — U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *Kaiser Aetna v. United States,* 444 U.S. 164, 178, 100 S.Ct. 383, 392, 62 L.Ed.2d 332 (1979); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). In the latter situation the government regulation must "substantially advance" a "legitimate state interest" or deprive an owner of an economically viable use of the land. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472 (1987); *Nollan,* 107 S.Ct. at 3146; *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). "[I]f regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co.,* 260 U.S. at 415, 43 S.Ct. at 160.

On numerous occasions the Supreme Court has noted that a takings claim based on the application of a governmental regulation "is not ripe [for adjudication] until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3117, 87 L.Ed.2d 126 (1985); *see MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); *San Diego Gas & Elec. Co. v. City of San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981); *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141; *Anthony v. Franklin County,* 799 F.2d 681, 683–84 (11th Cir.1986). This finality requirement is necessary so that the court can evaluate the "economic impact" and the extent of interference with "reasonable investment-backed expectations" by the challenged state action. *Williamson County,* 105 S.Ct. at 3119. A plaintiff also must establish that "no adequate state remedy, such as inverse condemnation, is available to redress the injury occasioned by the final decision." *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514, 1516 (11th Cir.1987); *see also Williamson County,* 105 S.Ct. at 3121 (a property owner cannot claim a violation of the Just Compensation Clause until the property owner has used the state procedure for obtaining compensation and been denied).

Appellant asserts that the temporary suspension action by the City Commission amounts to a regulatory taking and that the state does not provide an adequate procedure for seeking just compensation. The City does not dispute appellant's contention that no state remedy is available to address the alleged injury,[3] but maintains

---

**3.** "If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the owner 'has no claim against the Government for a taking.'" *Williamson County,* 105 S.Ct. at 3121 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018 n. 21, 104 S.Ct. 2862, 2881 n. 21, 81 L.Ed.2d 815 (1984)). Appellant argues that Florida law fails to provide a means for obtaining just compensation for a regulatory taking. In *Corn* we held that under Florida law the exclusive remedy available to a property owner challenging a zoning ordinance was a suit to invalidate the zoning ordinance and enjoin its enforcement. 816 F.2d at 1517. We concluded that because an action to recover just compensation is not available under Florida

law to a property owner injured as a result of an invalid zoning ordinance, the property owner's section 1983 action was ripe for review. *Id.* at 1519, 1520.

The Florida Supreme Court recently held in an inverse condemnation action that a taking occurred when the state destroyed healthy trees. *Department of Agric. & Consumer Servs. v. Mid–Florida Growers, Inc.,* 521 So.2d 101 (Fla.1988). The court stated that although the action was a valid exercise of police power, full and just compensation was due to the nursery owners. *Id.* at 105. Implicit in the court's holding is a determination that a property owner may bring an inverse condemnation suit for the valid exercise of police power which results in a taking. We do not believe, however, that *Mid–Florida*

that the City Commission never reached a final decision with respect to appellant's property. The City argues that there was no final decision because appellant never completed the wall that was a condition precedent to commencing business.

■ We believe that this case is ripe for adjudication. The City not only decided to temporarily suspend the project's approval granted by Ordinance No. 79–440 and the building permits, but it also passed an ordinance rezoning appellant's property approximately nine months later. As in *Corn*, the temporary suspension of the enabling resolution and the rezoning ordinance put a "complete moratorium" on the development. 816 F.2d at 1516. Appellant could not proceed with the construction of the wall because of the stop work order. The City therefore made it impossible for appellant to fulfill the condition precedent on which the City insisted. The rezoning ordinance[4] undeniably constituted a final, definitive position.[5]

■ The City argues that the South Florida Building Code establishes an appellate procedure whereby an aggrieved property owner may appeal a stop work order and the revocation or suspension of a permit to the Board of Rules and Appeals and then ultimately, by certiorari, to the Circuit Court of Broward County. The City claims that appellant should have exhausted these available state remedies before filing this section 1983 action.

"The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable." *Williamson County,* 105 S.Ct. at 3119. The powers of the Board of Rules and Appeals enumerated in the South Florida Building Code include the power to interpret the code, review decisions by building officials on matters regulated by the code, take certain actions with respect to unsafe buildings and suspend or revoke permits issued under the code. While the Board of Rules and Appeals is empowered to review the propriety of a stop work order, the Board does not have the power to overrule the City's zoning decision. Because the rezoning ordinance was a final decision by the City with respect to appellant's property and because the Board does not review the City's zoning decisions, we now address the merits of the takings claim.

■ For there to be a taking in this case the City's action must have failed to substantially advance a legitimate state interest. A government regulation will constitute a taking if it is "not reasonably necessary to the effectuation of a substantial public purpose...." *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631 (1978). This court found a regulatory taking in violation of the Constitution in *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir. Unit B Dec.1981), *cert. denied,* 456

*Growers* provides that an action for inverse condemnation is available to property owners for recovering just compensation for injuries sustained as a result of a zoning ordinance. While the question certified to the Florida Supreme Court characterized the state action as an exercise of police power, *Mid–Florida Growers* involved the destruction of trees, which is better described as an exercise of the right of eminent domain. The *Corn* court, after reviewing several Florida court decisions, concluded that zoning matters were "entirely distinct" from the availability of inverse condemnation suits in the context of the exercise of eminent domain power under Florida law. 816 F.2d at 1519. We therefore do not believe that *Mid–Florida Growers* should be extended to the facts of this case. Accordingly, absent the ability to recover money damages under Florida law, appellant's action is ripe for our review.

4. The City's effort to characterize the May 6 suspension as "temporary" is questionable as well. As the district court noted, the temporary suspension "in effect became permanent" because "there was no lifting of the suspension."

5. A representative of Landmark First National Bank of Fort Lauderdale, the second mortgage holder on appellant's project, testified at the rezoning hearing that the first mortgage on appellant's property was in foreclosure and foreclosure on the second mortgage was imminent. The first foreclosure was not final until March 23, 1981. Thus while foreclosure proceedings were in progress at the time of rezoning, technically appellant was the property owner who was injured as a result of the taking.

U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). In *Wheeler* a property owner obtained a permit from the city to construct an apartment complex. The permit was issued pursuant to a city ordinance. The property owner began construction on the site in reliance on the permit. Local residents opposed the development, and after a referendum the city passed a new ordinance forbidding the construction of new apartments. The new ordinance "prohibited the plaintiffs from proceeding with the construction." *Id.* at 100. This court affirmed the district court's finding that the issuance of the new ordinance was "arbitrary and capricious" and "a confiscatory measure" violative of the developer's fourteenth amendment rights. *Id.*

■ *Wheeler* is indistinguishable from this case.[6] The original resolution granted appellant a property interest. The rezoning ordinance denied appellant this property interest because the new classification did not accommodate a development like the wood-chipping operation. The City Commission's action therefore was a confiscatory measure. "[I]f a regulatory undertaking is confiscatory in nature, it is a taking." *Id.* at 100. We note also that although the taking did not occur simply because appellant expended a great amount of money to begin the project, this expenditure in reliance on the resolution underscores the importance of the original resolution.[7]

The City argues that the Supreme Court has held that land use regulations which promote health, safety, moral or general welfare must be upheld. *See Penn Central*, 438 U.S. at 125, 98 S.Ct. at 2659. Based on appellant's acceptance of refuse and the numerous complaints and threats of violence by area residents, the City asserts that the district court correctly held that the City properly exercised its police power in stopping work on the project. Appellant admits that it violated Resolution No. 79–440 by receiving inorganic materials. Appellant maintains, however, that assuming the public complaints were justified, criminal and civil remedies were available to solve any public health problems. Indeed, the city attorney recommended several alternatives to the City Commission at one of its early meetings.[8] While local regulations may have been violated, the City cannot cure such violations with a measure that violates the Constitution. As Justice Holmes stated in *Pennsylvania Coal Co. v. Mahon*, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for change." 260 U.S. at 416, 43 S.Ct. at 160. In light of the variety of avenues available to the City, its action was impermissible.[9]

---

6. Appellees attempt to distinguish *Wheeler* by arguing that in *Wheeler* the public opposed the project originally approved by the city, whereas in this case adverse public sentiment arose due to a change in the proposed use, which led to the City's reappraisal of the project and issuance of the stop work order. We believe that this distinction is irrelevant. In each case a taking occurred with the passage of a new ordinance which in essence repealed the city's prior approval of a development.

7. We reject appellant's contention that the City did not have the authority to amend the ordinance and to require that the wall be completed before the operations began. Because the wall was included in appellant's proposal, appellant is estopped from preventing the City from amending the resolution to reflect this understanding.

8. Citing *Hollywood Beach Hotel Co. v. City of Hollywood*, 329 So.2d 10 (Fla.1976), and *Sakol-*

*sky v. City of Coral Gables*, 151 So.2d 433 (Fla. 1963), the city attorney concluded in a May 2, 1980 communication to the city commissioners that appellant had acquired a vested right to proceed with the wood-chipping development. According to the minutes of the May 6 public hearing, the city attorney suggested that although appellant had a right to proceed with the planned development, the operation of a dump, which was feared by area residents, "could result in criminal penalties ... which could serve as the basis for an injunction or civil remedy."

9. Appellant also maintains that it was deprived of procedural due process in violation of the fourteenth amendment. Appellant states that the "commission meeting of May 6, 1980 was, at best, government by applause meter conducted in wholesale defiance of the state law mandated procedures for legitimate Commission action." It is unclear from the district court's opinion whether it considered this claim. We therefore will not address the merits of this claim.

 

### III.

We therefore reverse the district court's finding that there was no taking and remand for further proceedings.

REVERSED and REMANDED.