**GREENBRIAR, LTD. and Mary Roensch, Plaintiffs–Appellees, Cross–Appellants,**

v

**CITY OF ALABASTER, an Alabama municipal corp., Roger N. Wheeler, Marvin Neal Bailey, Wayne Lucas and Nina W. Kent, Defendants–Appellants, Cross–Appellees.**

**GREENBRIAR, LTD. and Mary Roensch, Plaintiffs–Appellees,**

v.

**CITY OF ALABASTER, an Alabama municipal corp., Defendant–Appellant,**

**Roger N. Wheeler, et al., Defendants.**

**Nos. 88–7086, 88–7204.**

United States Court of Appeals, Eleventh Circuit.

Sept. 1, 1989.

---

Parsons, Lee & Juliano, P.C., Robert E. Parsons, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Helen C. Foster, Birmingham, Ala., for defendants-appellants, cross-appellees.

Burr & Forman, F.A. Flowers, III, John F. De Buys, Jr., Mark McCarroll Lawson, Birmingham, Ala., for plaintiffs-appellees, cross-appellants.

Before FAY and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The city of Alabaster appeals from a judgment of the district court holding that its rejection of plaintiffs' request for the rezoning of certain property constituted a violation of substantive due process. The district court ordered that the property at issue be rezoned pursuant to plaintiffs' request and awarded $75,000 damages. We find that, as the decision of the City was a final one, this question is ripe for adjudication. Furthermore, we hold that the City's refusal to rezone was not arbitrary and capricious, and hence that plaintiffs suffered no violation of their substantive due process rights. Accordingly, we reverse the judgment of the district court.

## I. FACTS

In 1970 the city of Alabaster ("City") first adopted a zoning ordinance. The property at issue in this action, consisting of 76 acres,[1] was zoned multi-family residential, which it remained for 16 years. In October 1986 the city adopted a new zoning ordinance and map, which rezoned the property at issue from multi-family residential to single-family residential.

The 1986 zoning ordinance, which is currently in force, provides for a zoning classification known as "Planned Development District" ("PDD"). A PDD "is a method of development which permits a tract of land to be developed as one lot, rather than separate lots." Zoning Ordinance, City of Alabaster, Article VI, Section 15.1 (1986). The PDD is designed "to encourage coordinated development; to permit higher densities in conjunction with functional open space; to promote efficient use of land; and to promote preservation and enhancement of existing natural landscape fea-

---

1. The property is located west of Shelby County Highway 95 in the approximate vicinity of the intersection of Shelby County 66 and Shelby County 95, all located in Alabaster, Alabama.

tures." *Id.* Uses permitted in a PDD include "multi and single family residential dwellings, townhouses, and accessory structures; and uses permitted in the B-3 Business District [i.e. community shopping district]." *Id.*

In November 1986, Greenbriar, Ltd. and Mary Roensch ("Greenbriar" or "plaintiffs"), the property owners, submitted a preliminary PDD plan to the City, seeking to have the land at issue rezoned from single-family residential to PDD. The plan proposed that the 76 acres be developed with 49.8 acres as apartments and townhouses, 8.1 acres as retail and commercial, 11.1 acres as single-family, and 2.1 acres as a park. Street rights-of-way would require 5.7 acres. Following consultations with members of the City Council, the Planning and Zoning Commission and the City Building Inspector, a public hearing was held before the Planning and Zoning Commission in January, 1987. At the close of the hearing the plan was rejected by a 5–2 vote.

After the proposal underwent additional revisions, a second hearing before the Planning and Zoning Commission was held in March, 1987.[2] Three votes on the proposal at this meeting—one to reject the proposal, one to approve the proposal, and one to pass the issue to the City Council without a recommendation—resulted in 4–4 ties. The City Council then convened a public hearing on the proposal on March 19, 1987.[3] The Council rejected the proposal by a 5–1 vote.

Under Alabaster's zoning ordinance, the City Council has final authority on the question of rezoning; it is not required to accept the recommendation of the Planning and Zoning Commission. If the City Council refuses to rezone an area PDD, the

Planning and Zoning Commission must wait at least six months before reconsidering the same rezoning request. If the City Council rezones an area PDD, the developer must submit a final plan to the Planning and Zoning Commission, which then has exclusive control over amendments and modifications to the plan.

Shortly after the City Council vote refusing to rezone the area PDD, plaintiffs filed this action in district court pursuant to 42 U.S.C. § 1983, seeking damages and injunctive relief and alleging that the City's decision deprived them of due process in violation of the Fourteenth Amendment. The complaint contained no allegations of a taking of property without just compensation.[4]

At trial the parties stipulated that the court, rather than the jury, would decide all issues pertaining to damages should the plaintiffs succeed on the question of liability. The court granted the City's motion for a directed verdict as to procedural due process, but denied the motion for a directed verdict as to substantive due process. The court granted Greenbriar's motion for directed verdict on the issue of whether, for purposes of 42 U.S.C. § 1983, the defendants were acting under color of law. At the conclusion of trial, the court submitted to the jury the following special interrogatory:

> Was a majority of the Mayor and City Council of the City of Alabaster which denied plaintiffs' PDD zoning application, arbitrary and capricious in reaching their decision? R11:105.

The jury responded in the affirmative, and the court entered judgment for plaintiffs, ordering the City to amend its zoning map and zoning ordinance to rezone the subject

---

**2.** A scheduled hearing before the City Council in February was postponed after affected property owners complained that they had not been afforded legally-sufficient notice of the meeting. The revised proposal contemplated development of 29.2 acres as apartments and townhouses, 10.3 acres as retail and commercial, and the remainder as single-family, with allowance for street rights-of-way.

**3.** The Zoning Ordinance for the City of Alabaster provides: "Upon receipt of the recommenda-

tion of the Planning and Zoning Commission in favor of a proposed zoning amendment, the City Council shall review and decide the proposed amendment in accordance with State law. If the request is denied [by the Commission], the applicant may appeal the denial to the City Council." Article III, Section 2.1(D) (1986).

**4.** The complaint also alleged an equal protection violation, but this argument was not made in the district court, and has not been advanced on appeal. Hence, we do not address it.

property to PDD, and directing the City to determine whether the property would be developed pursuant to Greenbriar's original or amended plan.

The City subsequently moved that the court set aside, alter or amend the order and judgment, contending, *inter alia,* that the court erred in permitting the jury to determine whether the City acted arbitrarily and capriciously. The court denied the motion, holding that the issue was properly submitted to the jury and that the jury's answer to the special interrogatory constituted a permissible view of the evidence and was "fairly debatable." *Greenbriar, Ltd. v. City of Alabaster,* No. 87–0708 (N.D.Ala. Feb. 3, 1988), at 12–13. The court adopted the jury finding as the ultimate fact and conclusion of law. After a hearing on the evidence as to damages, the court awarded Greenbriar the sum of $75,-000.[5] Finally, the court stayed execution of the order and judgment pending appeal, and approved a supersedeas bond submitted by the City in the amount of $85,-000.

The City timely appealed from the judgment.[6]

---

5. The award was against the City alone, and not against the Mayor or Council members in their individual capacities, who were found to be entitled to absolute immunity as legislators. That ruling is not challenged on appeal.

6. Greenbriar cross-appeals from the district court's dismissal with prejudice of its amendment of the complaint challenging the facial validity of the 1986 zoning ordinance adopted by the City. We decline to address the merits of this cross-appeal, because Greenbriar has waived this issue by failing to argue it in its brief on appeal. Although Greenbriar refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits as to this issue in its initial or reply brief. Accordingly, the issue is deemed waived. *See Tedder v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir.1979) (Although point was raised in statement of issues, issue was deemed abandoned by appellant where it was not addressed anywhere else in the brief); *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 324 (5th Cir.1977) (Mere mention in brief on appeal that district court was in error, absent any specific argument as to how the court was in error, was insufficient to present the matter for adjudication on appeal). *See also Hunter v. Allis–Chalmers Corp., Engine Div.,* 797 F.2d 1417, 1430 (7th Cir.1986) (issue waived on ap-

peal where its only mention in brief was reference to argument in motion before district court).

7. Several times in the past decade the Supreme Court has declined to resolve the constitutional problems arising in regulatory takings cases, because it has determined that the claims before it were not ripe. *See, e.g., MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Williamson County,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *San Diego Gas & Electric Co. v. San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981); *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

Greenbriar contends that, as the ripeness question was not raised in the district court, we may not address it. However, ripeness goes to whether the district court had subject matter jurisdiction to hear the case. The question of ripeness, like other questions determinative of subject matter jurisdiction, may be raised *sua sponte* by an appellate court. *See Shelter Creek Development Corporation v. City of Oxnard,* 838 F.2d 375, 377 (9th Cir.), *cert. denied,* 109 S.Ct. 134, 102 L.Ed.2d 106 (1988); *Duke City Lumber Co. v. Butz,* 539 F.2d 220, 221 n. 2 (D.C.Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977).

---

## II. RIPENESS

The Constitution protects against zoning decisions which take property without just compensation, U.S. Const., Amend. V. The parties here do not deny that final zoning decisions are also subject to substantive due process scrutiny, i.e., such decisions must not be arbitrary and capricious so as to amount to an abuse of governmental power. *See Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *Spence v. Zimmerman,* 873 F.2d 256, 258–62 (11th Cir.1989); *Bello v. Walker,* 840 F.2d 1124, 1128–30 (3d Cir.1988); *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). *See also Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3122–23, 87 L.Ed.2d 126 (1985). Whether the violation alleged is a taking without just compensation or a deprivation of substantive due process, the decision of a municipality is not ripe for review unless that decision is final and definite with respect to the property at issue.[7] "Until a property owner

**1574**

has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed.'" *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (quoting *Williamson County,* 105 S.Ct. at 3116, 3118, n. 11).

In this case, plaintiffs assert only a substantive due process claim; they make no claim that there has been a taking without just compensation. It is clear that resolution of the substantive due process inquiry "depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectations. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property." *Williamson County,* 105 S.Ct. at 3123. Accordingly, before addressing the substantive merits of the City's claim, we must consider whether the City's rejection of Greenbriar's rezoning plan was final.[8]

In determining whether an administrative agency or local government body has reached a final decision regarding the particular land in question, courts have found an absence of finality where property owners did not avail themselves of the opportunities provided by state or federal statute to seek variances or waivers from zoning decisions, *see, e.g., Williamson County,* 105 S.Ct. at 3117–18; *Hodel v. Virginia*

---

**8.** In resolving jurisdictional questions arising out of § 1983 takings and substantive due process claims, courts have taken care to distinguish procedures which permit property owners to seek variances from administrative decisions, which go to finality, from two other types of procedures: a) procedures which allow for review of administrative decisions, which go to exhaustion; and b) procedures which authorize compensation for a taking, which go to the question of just compensation.

Under *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. Thus, exhaustion of administrative remedies is not required either for a takings claim or for a substantive due process claim. However, "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." *Williamson County,* 105 S.Ct. at 3119. *See A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483, 1487 (11th Cir. 1988), *cert. denied,* —— U.S. ——. 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989). Plaintiffs presenting takings and/or substantive due process claims must demonstrate that the challenged decision or regulation is final.

The other type of procedure to be distinguished from variances—i.e. allowing a property owner to obtain compensation for a taking— is relevant only to the takings analysis, not to determine whether a zoning board decision comports with constitutional requirements of substantive due process. "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action ... is not 'complete' until the State fails to provide adequate compensation for the taking." *Williamson County,* 105 S.Ct. at 3121. Thus, "if a State provides an adequate remedy for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.,* 105 S.Ct. at 3121. A property owner has been denied substantive due process, however, the moment a governmental decision affecting his property has been made in an arbitrary and capricious manner, regardless of whether he is later compensated for that violation. "The remedy for a regulation that goes too far, under the due process theory, is not 'just compensation,' but invalidation of the regulation, and if authorized and appropriate, actual damages." *Id.,* 105 S.Ct. at 3122.

This court in dictum has suggested that, "in holding that the claim [at issue] was premature under either" a Just Compensation or a Due Process theory, "the Supreme Court [in *Williamson County* ] implicitly ruled that the same ripeness test must be applied to both claims." *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514, 1516 n. 2 (11th Cir.1987). The plaintiff in *Corn* presented only a takings claim, and not a substantive due process claim. Thus, it was unnecessary for the court there to determine the ripeness requirements for claims of the latter category. To the extent that the dictum in *Corn* may be interpreted to state that both finality and denial of just compensation are requirements for a substantive due process claim, such an implication is expressly rejected.

In the instant case, plaintiffs have raised only a substantive due process claim to the City zoning action. Accordingly, we must consider only whether the City decision denying plaintiffs permission to develop a PDD was final.

*Surface Mining & Reclamation Association, Inc.,* 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981), or where the property owners had not submitted a plan for development of the property prior to the challenged decision. *See Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). In addition, finality has been found wanting where, although one development plan had been submitted and rejected, the property owners had not sought approval for any other plan, and thus it was not clear that the owners could not secure approval for any use that might produce economic benefit from the property. *See MacDonald,* 106 S.Ct. at 2568 and n. 8.

Here Greenbriar did not fail to secure any variances which might be available. Unlike in *Williamson County* and *Hodel,* there are no variances available under the applicable local law which could change the zoning classification of the property.[9] This conclusion is bolstered by the fact that the parties went to trial on a damages issue, and nothing was offered at trial to suggest that any possible variances might have reduced damages.

Nor is this a case where the property owner failed to submit a plan to the City for consideration. The record is clear that Greenbriar, as required by the zoning ordinance, submitted a preliminary PDD plan to the City in the fall of 1986, modified the plan after consulting with several members of the City Council, and then presented their proposal to the Planning and Zoning Commission on November 3, 1986. The plan was rejected after a full hearing by the Planning and Zoning Commission. After further consultations and additional revisions to the plan, another hearing was held by the Commission, resulting in three tie votes. The plan was sent to the City Council for consideration. Following a public hearing on March 19, 1987, the Council rejected the proposal. The Council had the final authority to decide whether to rezone the area at issue.[10]

Finally, the City argues that our consideration of this claim is barred by the *Mac-*

**9.** Greenbriar was not required to seek a variance from the Planning and Zoning Commission because that body has the power to grant variances with respect to subdivisions only, but not with respect to PDD's. *See* Zoning Ordinance, City of Alabaster (1986) (no provision for variances relating to PDD's). Even with respect to subdivisions, the Commission may not grant a variance which has "the effect of nullifying the intent or purpose of the subdivision regulations, zoning ordinance, major street plan, or other elements of the comprehensive plan." Alabaster Code, Appendix B, Article VIII § 1, at 1293.

Moreover, Greenbriar could not have sought a variance from a local board of zoning adjustment, because under Alabama law that body may grant variances only to prevent an unnecessarily harsh result of an existing ordinance, not to amend or modify the ordinance so as to rezone a tract of land. *See* Ala.Code § 11–52–80(d)(3) (1985) (authorizing variance from the terms of an ordinance where "a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done").

We note that, unlike here, in *Williamson County* the applicable "regulations clearly indicated that unless a developer applied for a variance in writing and upon notice to other property owners, 'any condition shown on the plat which would require a variance will constitute grounds for disapproval of the plat.'" 105 S.Ct.

at 3118 (quoting regulations). Moreover, the Court in *Williamson County* observed that "variances could have been granted to resolve at least five of the Commission's eight objections to the plat." 105 S.Ct. at 3117.

The *Hodel* Court similarly took account of "the opportunities provided by the [Surface Mining] Act to obtain administrative relief by requesting either a variance from the approximate-original-contour requirement of § 515(d) or a waiver from the surface mining restrictions in § 522(e). If appellees were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions." 101 S.Ct. at 2371.

**10.** *See* Zoning Ordinance, City of Alabaster, Article III, Sections D, E (1986). *Cf.* Ala.Code § 11–52–76 (1985) ("The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed...."); Ala.Code § 11–52–79 (1985) ("In availing itself of the powers conferred by this article, the legislative body of any incorporated city or town may appoint a commission, to be known as the zoning commission, to *recommend* the boundaries of the various original districts and appropriate regulations to be enforced therein") (emphasis added).

*Donald* "reapplication" requirement—i.e., the requirement that, where one comprehensive plan for the property has been rejected, the property owner must seek a final determination as to alternative, less ambitious schemes of development. Relying on *MacDonald,* the City contends that Greenbriar should have sought approval for development of the property under the existing zoning classification.

However, review of the record indicates that both parties agreed that the only permitted alternative development was under the existing classification, R–2 (single family residential). Throughout a full jury trial on liability, followed by a bench trial as to damages, the City never presented evidence that the property at issue could have been developed under more intensive zon-

ing than the existing classification. At the trial on damages, the City had full opportunity and incentive to show that more intensive zoning was permitted, because such evidence would have reduced the damages recoverable by plaintiffs. In these circumstances we can safely assume that no more intensive zoning is permissible. The City has effectively conceded that the only alternative plan of development would have been under the existing zoning. As there is no uncertainty regarding the level of development that would be permitted, *cf. MacDonald,* 106 S.Ct. at 2568 and n. 8, *MacDonald*'s reapplication requirement serves no purpose here. We therefore decline to apply it to these facts.[11] Accordingly, we hold that the decision of the City Council was final and conclusive.[12]

---

**11.** It is not at all clear that the *MacDonald* reapplication requirement should apply to substantive due process claims, *see Herrington v. Sonoma County,* 857 F.2d 567, 570 (9th Cir. 1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989), *modifying,* 834 F.2d 1488 (9th Cir.1987), or that, if it is applicable, the requirement should apply in precisely the same manner as in the takings context. Given our resolution of the reapplication issue on other grounds, we need not now decide either of these questions. Nonetheless, we note that the distinct nature of substantive due process and takings violations may provide a basis for differing application of the *MacDonald* reapplication requirement. A takings claim requires a showing that the challenged action has deprived an owner of all or substantially all economically beneficial use of his property. *See First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987) (expressly limiting holding— that landowner may recover damages before final determination that regulation constitutes a taking—to situation where "the ordinance in question denied appellant all use of its property"); *id.,* 107 S.Ct. at 2393 (Stevens, J., dissenting) ("a regulatory program that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value ... only the most extreme regulations can constitute takings."); *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2662–63, 57 L.Ed.2d 631 (1978) (Mere diminuntion in value of property because of land use regulation does not by itself constitute a taking). Thus, a determination of precisely what use is permitted is of great relevance in ascertaining whether a taking has occurred. By contrast, a substantive due process claim requires a demonstration that a decision is arbitrary and capricious. Discerning what alternative uses are permitted would not

seem to be significant in assessing the arbitrariness·of zoning decisions, although, as we note in the text, it clearly is relevant in determining what damages result from an arbitrary decision.

**12.** The City further contends, relying upon *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989), and *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir.1987), that its decision not to rezone the property cannot be deemed final, because no complete moratorium was ever placed on the development of Greenbriar's property. Indeed, the City argues, this property has been available for single-family development at all times since the decision, and Greenbriar has in fact developed single-family homes on part of the property during the course of this litigation. However, this argument is misplaced. Although both *A.A. Profiles* and *Corn,* in reaching their respective conclusions that a final decision had been rendered, observed that the local authority had placed a complete moratorium on development, neither case held that failure to impose such a moratorium would *per se* demonstrate absence of finality.

We note that in *A.A. Profiles* and *Corn,* the court was confronted with takings claims, which must demonstrate that all or substantially all beneficial use of the property has been denied. In such a case, the showing that the City has placed a complete moratorium on further development of the property may conclusively demonstrate the all-encompassing prohibition required. By contrast, where, as here, plaintiffs have alleged a violation of substantive due process, a showing of arbitrary and capricious behavior may be made even in the absence of a complete moratorium on development.

Having determined that the City decision to refuse to rezone plaintiff's parcel was final for the purposes of § 1983 analysis, and thus that a claim of substantive due process is properly presented, we now consider whether the constitutional requirements of the Fourteenth Amendment have been met.

## III. SUBSTANTIVE DUE PROCESS

The City contends that the district court erred in denying its motion for a directed verdict on the alleged substantive due process violation, because there existed a "rational basis" for the rejection of Greenbriar's zoning plan. We agree.

It has long been established that zoning regulations will not be declared unconstitutional as violative of substantive due process unless they "are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). "The current test in this circuit as to whether there has been a violation of substantive due process in the context of § 1983 is twofold. First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the statute of a constitutional violation." *Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir.1985). In light of our disposition of this case on the basis of the second prong of this test, we need not address the first prong.[13]

■ Turning immediately to the second prong, courts have held that a deprivation

of a property interest is of constitutional stature if it is undertaken " 'for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.' " *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (quoting *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982)). *See Anthony v. Franklin County*, 799 F.2d 681, 684 (11th Cir.1986) (same). The relevant question for consideration is whether there existed a rational basis for the City's rejection of Greenbriar's plan, or, phrased in the alternative, whether the City's action bore no substantial relation to the general welfare. *See Spence v. Zimmerman*, 873 F.2d 256, 259 (11th Cir.1989) (finding no violation of substantive due process where the city was not acting with an improper motive or arbitrarily or capriciously without rational basis for its actions); *Grant v. Seminole County, Fla.*, 817 F.2d 731, 735–36 (11th Cir.1987) (applying rational basis standard to substantive due process and equal protection challenges to zoning regulation); *Couf v. DeBlaker*, 652 F.2d 585, 588 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982) (zoning regulation must be sustained against due process challenge " 'if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property.' ") (quoting *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981)); *Stansberry v. Holmes*, 613 F.2d 1285, 1288 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980) (referring to "the standard traditionally applied to zoning regulations—whether the regulations are arbitrary and unreasonable, having no rational relationship to a legitimate governmental interest.").[14]

---

**13.** In applying the two-part test, "[t]he key inquiry in a case is the second prong of the test. Substantive due process protects a general right of an individual to be free from the abuse of governmental power." *Rymer*, 764 F.2d at 802 n. 4.

**14.** We undertake this inquiry cognizant of the principle that "[e]conomic and social legislation is presumed valid if it is rationally related to a legitimate state interest." *Anthony v. Franklin County*, 799 F.2d at 684. More particularly, as a " 'zoning commission is a quasi-legislative body

... [i]ts actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare.' " *Couf v. DeBlaker*, 652 F.2d 585, 588 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982), quoting *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). *See Grant v. Seminole County, Fla.*, 817 F.2d 731, 736 (11th Cir.1987) ("zoning regulations of a quasi-legisla-

■ Before applying the foregoing standard to the facts of this case, we note that Greenbriar argues that substantial evidence supports the jury finding that the City's denial of PDD status to the subject property was arbitrary and capricious. However, the ultimate issue of whether a zoning decision is arbitrary and capricious is a question of law to be determined by the court.[15] Although subsidiary facts are

properly for the factfinder, the ultimate issue is for the court. Thus, we must determine whether the zoning decision was arbitrary and capricious, taking all reasonable inferences of fact in favor of the jury verdict.

■ In pressing its contention that the actions of the City with respect to its property were arbitrary and capricious,

tive zoning commission are presumed constitutionally valid"); *Nasser v. City of Homewood,* 671 F.2d 432, 441 (11th Cir.1982) (same).

15. *See Bateson v. Geisse,* 857 F.2d 1300, 1302–03 (9th Cir.1988) (characterizing as "questions of law" or "mixed questions of law and fact" district court's determination that city council's decision to withhold appellee's building permit was arbitrary and capricious). *See also Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926) (weighing whether "the reasons are sufficiently cogent to preclude *us* from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable") (emphasis added); *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974) (affirming district court dismissal of complaint which alleged due process and equal protection violations, where district court determined that zoning commission rejection of rezoning proposal was not arbitrary); *Grant v. Seminole County, Fla.,* 817 F.2d at 735–36 (affirming district court grant of summary judgment for defendant municipality on grounds that there existed a rational basis for challenged zoning regulation). *Cf. Herrington v. Sonoma County,* 834 F.2d 1488, 1499 (9th Cir.1987), *modified on other grounds,* 857 F.2d 567 (1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989) (expressing no opinion as to propriety of submitting to jury issue of liability for substantive due process violation, where question was not raised in district court).

Where substantive due process violations have been alleged in other contexts, this court has made clear that it is for the judge to decide whether governmental actions so offend standards of decency and fairness as to implicate constitutional protections. Thus, where police misconduct of a prisoner is alleged, " '[i]n determining whether the constitutional line has been crossed, a *court* must look to such factors as . . . [listing factors]. . . .' " *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500–01 (11th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (emphasis added).

To be sure, it is proper for the jury to make subsidiary fact findings upon which the court may ultimately rest its determination of arbitrariness. *See, e.g., Barnett v. Housing Authority of City of Atlanta,* 707 F.2d 1571, 1577–78 (11th Cir.1983); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332–33, 1336 (11th Cir.1982). However, the ultimate question of whether substantive due process has been violated is for the judge.

Plaintiffs cite *Bellow v. Walker,* 840 F.2d 1124 (3rd Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988), for the proposition that the determination of arbitrariness is a question of fact. We do not agree that *Bello* stands for the stated proposition. The court in *Bello,* reversing a grant of summary judgment for defendant municipality, held that the developer plaintiffs had made out a claim of denial of substantive due process. The court noted:

We need not define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive. The plaintiffs in this case presented evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. These actions can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983. While the defendants claim that the building permit was denied because of plaintiffs' failure to build in numerical sequence, thus presenting an arguably rational ground for the denial of the permit, it is the factfinders' role to resolve this factual dispute.

840 F.2d at 1129–30. We interpret the above language to mean that the question of what motivated the denial of a zoning plan or building permit—whether "partisan political or personal reasons" or "plaintiffs' failure to build in numerical sequence"—is a subsidiary fact for the jury. However, the ultimate issue was decided by the court as a question of law: "[t]hese actions can have no relationship to any legitimate governmental objective, and, *if proven,* are sufficient to establish a substantive due process violation." *Id.* (emphasis added).

Greenbriar claims that, although its proposal for PDD status was well-suited to the needs of the surrounding communities, City officials acted "solely on partisan political reasons unrelated to the merits of plaintiffs' proposal...." Brief of Appellees at 38. Thus, Greenbriar points to evidence in the record that Council members were subjected to "political pressure" and that some were "scared of the crowd." Brief of Appellees at 38.[16]

However, a planning commission or a City Council is not a judicial forum; it is a legislative body held democratically accountable through precisely the forms of political suasion to which Greenbriar objects. *See Couf v. DeBlaker*, 652 F.2d at 590 ("Our opinions repeatedly characterize local zoning decisions as 'legislative' in nature"); *South Gwinnett Venture v. Pruitt*, 491 F.2d at 7 ("local zoning is a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action"). Council members who evaluate a proposal in light of their constitutents' preferences do not necessarily overlook what Greenbriar contends to be the "merits" of a particular zoning plan.[17] Here, there is no indication that Council members' attention to citizens' concerns in assessing Greenbriar's zoning plan deprived their decision of a rational basis. The analysis of the Seventh Circuit is apt:

> [N]othing is more common in zoning disputes than selfish opposition to zoning

changes. The Constitution does not forbid government to yield to such opposition; it does not outlaw the characteristic operations of democratic ... government, operations which are permeated by pressure from special interests.... The fact 'that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws' ... does not state a claim of denial of substantive due process.

*Coniston Corp.*, 844 F.2d at 467 (citation omitted), quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).[18]

Greenbriar has failed to demonstrate that local officials did not rationally conclude that the PDD proposal was not in the best interest of the community. Greenbriar contends that its proposal for PDD status was compatible with the traffic, public health and other needs of neighboring areas, and that the plan was modified to incorporate, and/or account for, each of the suggestions or objections of City officials and surrounding property owners. However, review of the record indicates that several members of the City Council simply disagreed with Greenbriar's assessment of the plan's compatibility with the surrounding area, that there existed a rational basis for such disagreement, and that modifications to the plan failed to alleviate their concerns.[19]

16. Greenbriar contends that, after Councilman Lucas voted in favor of the revised proposal for PDD status at the Planning Commission stage, he changed his vote in response to his neighbors' pressure. Councilman Draper was also, according to Greenbriar, intimidated by political pressures into voting against the proposal. In particular, Greenbriar alleges that Draper's initial professed concerns with respect to the traffic consequences of PDD development were contradicted by other statements of his approving of the development's traffic implications.

17. In this regard, it is of some relevance that at both the January 5, 1987 and March 2, 1987 public hearings before the Planning and Zoning Commission, and at the March 19, 1987 meeting of the City Council, all of the representatives of neighborhood associations that spoke were opposed to the granting of PDD status to the property.

18. Of course, where local officials make decisions for "personal reasons" which "can have no

relationship to any legitimate governmental objective," their actions may rise to the point of unconstitutional arbitrariness. *Bello v. Walker*, 840 F.2d at 1129–30 (allegations that municipality's denial of building permit was influenced, among other reasons, by animosity of two members of town council toward one of plaintiffs' employees, made out a claim of substantive due process sufficient to survive motion for summary judgment). There was no evidence in this case of personal animosity or other illegitimate motivation. As discussed in the text, it was not illegitimate to listen sympathetically to the concerns of neighborhood residents.

19. Greenbriar offers several other arguments in support of its arbitrariness claim, none of which have merit. Greenbriar argues that the City failed to give the legally required notice to surrounding property owners prior to the January, 1987 hearing before the Planning and Zoning Commission, and that, despite this legal deficiency, the City sought to proceed with the hear-

Several City Council members expressed concern about the effect on surrounding single-family neighborhoods of a proposal entailing commercial, retail and multi-family development. Plaintiffs' expert Robert Dow, a real estate appraiser and consultant, testified that the insertion of apartments adjacent to single-family subdivisions would lower the value of the subdivisions.[20] Plaintiffs' land use expert, Robert M. House, testified that development of the area under the existing zoning would be reasonable and compatible with surrounding neighborhoods.

Council members also noted potential traffic problems posed by the development. Plaintiffs' traffic engineer, Darrell Skipper, testified that existing roadways would not support the proposed development, and that if the property were fully developed as a PDD, traffic would be two and one-half times greater than if the area were developed as zoned for single-family housing.[21] Indeed, plaintiff Mary Roensch acknowledged that, even prior to the proposed de-

velopment, the major intersection in the area was becoming "increasingly well-traveled" and "very busy," with traffic backed up along one of the roads during mornings and evenings. R2:100.

Additional opposition to the proposal was grounded in its impact upon a school system which was already nearing capacity. Finally, opponents of PDD expressed concern that the proposal would place increased demands on the City's sewer system.

In sum, review of the record indicates that neighborhood representatives offered several reasons for their opposition to the proposed development, and that Council members properly took those views into account in undertaking their own evaluations of the proposal. Greenbriar has failed to show that Council members acted irrationally or arbitrarily in rejecting the PDD rezoning plan. To the contrary, we conclude that the record clearly reflects a rational basis for the City's decision not to rezone the subject property.[22]

ing in February. Nonetheless, plaintiffs acknowledge that, when they objected, the hearing was postponed, and they were given another opportunity to appear before the Commission. Greenbriar further asserts that the five members of the City Council who voted against PDD status for the property were not fully apprised of the contents of its proposal. However, no specific evidence in the record supports this assertion. Finally, plaintiffs complain that they were given only thirty minutes to present their proposal, and ten minutes of rebuttal time, at the public hearing before the City Council on March 19, 1987. However, the record indicates that counsel DeBuys, who spoke on behalf of Greenbriar at the meeting, stated that he would not use all of the allotted time. DeBuys further acknowledged that, upon completion of his thirty minutes, he rejected an offer of additional time, explaining that he had nothing further to add. Furthermore, plaintiff Roensch testified that no request for more time, or objection to the stated limit, was ever made at the Council meeting.

20. Greenbriar states that, in response to the concerns of neighboring residents, the plan was modified prior to the March 1987 City Council hearing to provide additional buffers for single-family homes in surrounding areas. These buffers were to include two rows of single-family homes to be built on the north, south and west of the property. However, Greenbriar would be hard put to argue, and it does not do so, that such modifications made irrational City Council members' sensitivity to neighboring res-

idents' concerns about declines in property values.

21. Although Greenbriar contends that its plan would have made possible improvements in traffic conditions through the installation of additional lanes and a traffic light, Mayor Wheeler testified that the County lacked the necessary funds to implement these changes.

22. In light of our disposition, we need not address the City's contention that a substantive due process violation is not cognizable in the zoning context absent a claim that property has been unconstitutionally taken without just compensation. *See Rymer v. Douglas County,* 764 F.2d at 802 n. 5 ("We express no opinion whether there can ever be a substantive due process violation in cases where a specific constitutional guarantee is involved"). *Cf. Herrington v. Sonoma County,* 834 F.2d 1488 (9th Cir. 1987), *modified on other grounds,* 857 F.2d 567 (1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989) (affirming judgment of liability for due process and equal protection violations, in absence of taking claim); *Anthony v. Franklin County,* 799 F.2d 681 (11th Cir.1986) (considering merits of substantive due process claim after finding taking claim premature).

For similar reasons, we also decline to address the City's claim that the district court erred in allowing plaintiff's land use expert testimony that the denial of PDD rezoning was arbitrary and capricious.

## IV.  CONCLUSION

We conclude that the City's denial of Greenbriar's rezoning request was not arbitrary and capricious.  Accordingly, the plaintiffs have not shown a deprivation of substantive due process.  The judgment of the district court is

REVERSED.