Lynda **BLUMBERG,** as an individual plaintiff, and El Pasado Condominium Association, Inc., a Florida corporation, as representatives of a proposed class, Plaintiffs,

v.

**PINELLAS COUNTY, a political subdivision of the State of Florida, Defendant.**

No. 91–1255–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Nov. 9, 1993.

F. Wallace Pope, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for plaintiffs.

Joseph Arthur Morrissey, Pinellas County Attorney's Office, Clearwater, FL, for defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on cross-motions for and in opposition to final summary judgment. Also pending is Defendant's motion to dismiss. For the reasons hereinafter stated, the Court grants Plaintiffs' motion for summary judgment and denies Defendant's cross-motions.

This case is about water, specifically water provided to the citizen customers of the Pinellas County water system. Water is a necessity, without which life is not possible. Residential water hook-ups are not a luxury, such as for instance cable television (although some households may disagree with this observation), but are required for maintenance of public health and welfare. The issues raised here are of great concern to the general public. It is in this spirit that the Court turns to the issues at hand.

### JOHNSON ACT

This case addresses whether an applicant for utilities who pays a deposit to a governmental entity is entitled to the interest which accumulates on the deposit. The first question before the Court is jurisdictional. Defendant argues that 28 U.S.C. § 1342, otherwise known as the "Johnson Act", precludes the Court from exercising jurisdiction. As Plaintiff correctly points out, this Court previously denied a similar Johnson Act motion to dismiss in *Pope v. Clearwater*, 767 F.Supp. 1147 (M.D.Fla.1991). The same reasoning applies to the present case. Although the Johnson Act has been interpreted to bar federal courts from exercising jurisdiction in utility rate cases, the relief Plaintiff seeks, if

granted, would not in any way affect the rates established by Defendant. This Court accordingly finds the Johnson Act does not preclude it from exercising jurisdiction. Defendant's motion to dismiss is therefore denied.

### RIPENESS FOR REVIEW

■ Defendant also alleges that Plaintiffs' complaint is not "ripe" for federal judicial review because plaintiffs have not filed a state action for just compensation. In support, Defendant cites *Reahard v. Lee County,* 978 F.2d 1212 (11th Cir.1992), a case with similar issues, wherein the Eleventh Circuit remands with instructions that the district court make an express determination as to whether subject matter jurisdiction exists.

Defendant's ripeness argument relies on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). *Williamson* stands for the proposition that a property owner cannot claim a violation of the Fifth Amendment "just compensation" clause without first following whatever adequate State procedures exist for seeking just compensation. *Id.* Under both *Williamson* and *Reahard,* this Court must thus expressly determine whether an adequate procedure is available in Florida which would preclude Plaintiffs' federal claim.

Defendant refers to *Joint Ventures, Inc. v. Department of Transportation,* 563 So.2d 622 (Fla.1990), as giving plaintiffs in regulatory takings cases the right to bring inverse condemnation proceedings. But upon examination, it is clear that the Florida Supreme Court was merely distinguishing an inverse condemnation remedy as no substitute for that of a property owner's remedy under eminent domain, which was the issue at hand. 563 So.2d at 627. The most that can be said from *Joint Ventures* is that the "right to seek relief through inverse condemnation is implied" in the Florida Constitution. *Id.*

Defendant also relies upon *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1542 (11th Cir.1991), alleging that the Eleventh Circuit recognizes that a constitutional right to bring inverse condemnation proceedings exists in Florida under *Joint Ventures.* But the existence of an implied constitutional right does not equate to a finding of an adequate state procedure for seeking just compensation, required to deny ripeness under *Williamson.* 473 U.S. 172 at 194–195, 105 S.Ct. 3108 at 3120–3121.

Although the Court finds Defendant's reliance on *In re Forfeiture of 1976 Kenworth Truck,* 576 So.2d 261 (Fla.1990) correct to show that neither real nor personal private property can be taken for public purpose without just compensation under the Florida Constitution, this again begs the question of whether an adequate state procedure exists.[1]

This Court finds Plaintiffs' reliance on *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir.1987) more persuasive. In *Corn,* the Eleventh Circuit examined Florida law to determine whether an alternative remedy existed which would preclude a landowner's federal claim for money damages under 42 U.S.C. § 1983, arising as the result of a regulatory taking of property. *Id.* The Court of Appeals described how equitable relief was the exclusive remedy in Florida for a confiscatory zoning regulation under *Dade County v. National Bulk Carriers, Inc.,* 450 So.2d 213 (Fla.1984). *Id.* at 1517.

The Florida Supreme Court based its decision in *National Bulk Carriers* on the fact of the exercise of state police power, which enabled the government to regulate the use of property for the benefit of the general health and well-being of its population. *Corn,* 816 F.2d at 1518. The Court of Appeals found that the Florida Supreme Court distinguished the use of regulatory police power, for which no action under inverse condemnation was possible, with the exercise of the power of eminent domain, under which Florida property owners have a right to seek money damages. *Corn,* 816 F.2d at 1518.

---

1. It is worth noting that the Florida Supreme Court found respondent's motion to determine damages should be treated as a counterclaim for inverse condemnation. *In re Forfeiture of 1976 Kenworth Truck,* 576 So.2d 261, 263 (Fla.1990). This determination would obviously not be available to Plaintiffs under the facts and circumstances of the present case.

The Eleventh Circuit pointed out that Justice Overton's concurring opinion in *City of St. Petersburg v. Wall,* 475 So.2d 662 (Fla.1985) stressed this distinction in Florida law. *Id.* The Court of Appeals further noted that zoning matters (which involve the use of the state's regulatory police power) should be viewed as "entirely distinct" from the availability of inverse condemnation under Florida law for such contexts as the rights of way for roads. *Id.* at 1519.[2]

Plaintiffs BLUMBERG and EL PASADO seek money damages as well as equitable relief in their initial complaint. This Court finds regulation of water utility deposits by county ordinance more analogous to a confiscatory zoning ordinance than to the exercise of state powers of eminent domain. The present case involves the exercise of the state regulatory police powers by the Defendant PINELLAS COUNTY.

Accordingly, the Court finds no adequate alternative remedy at law exists for Plaintiffs in Florida courts, based on *Corn.* Given the lack of any alternative remedy in Florida courts, the Court finds the "just compensation" determination necessary under *Williamson County* has been satisfied, that Plaintiffs' claim is ripe for federal judicial review, and that subject matter jurisdiction exists. Having expressly found jurisdiction, the Court now considers Plaintiffs' motion for summary judgment.

### MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure 56(c).

The Supreme Court addressed summary judgment in the trilogy of 1986 cases of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), all of which require that the party seeking summary judgment identify evidence which shows the absence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 10 S.Ct. at 2511 (citations omitted).

This circuit follows, in *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983), requiring the moving party to sustain its burden of showing the absence of a genuine issue as to any material fact when the evidence is viewed in the light most favorable to the nonmoving party. Any doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–7 (5th Cir.1979).

### UNDISPUTED FACTS

These facts are not disputed by either party.

1) Defendant PINELLAS COUNTY operates utilities pursuant to Florida Statutes, Chapter 153.

2) PINELLAS COUNTY, through its Board of County Commissioners, is a rate making body of a state political subdivision, under Florida Statute § 153.03(3), (1991).

3) As of August 19, 1980, the Pinellas County Board of County Commissioners approved a revised "Pinellas County Water System Policy Manual".

---

**2.** The Eleventh Circuit also observed in *Corn* that whether Florida would be obligated to permit a property owner to bring suit seeking recovery of money damages under an inverse condemnation theory, as a matter of federal constitutional law, remained an unresolved issue, as the United States Supreme Court has declined to address this issue on four separate occasions. *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514, 1519 (11th Cir.1987).

4) Section 5.2, page 8 of the Policy Manual required that all utility customers pay a deposit to receive utility service.

5) Section 5.2, page 8 of the Policy Manual further directed that deposits be placed in an interest-bearing account, with all interest to be reinvested into the operation and maintenance costs of the water system, in order to offset the costs of providing service.

6) Prior to September 1, 1992, the County's deposit policy was that interest was not paid to its customers; it was used instead to offset operating costs.

7) Prior to September 1, 1992, deposits were held by Defendant until a final read out of the account, or until termination of service.

8) The Water System Policy Manual was advertised in local newspapers on August 4, 1980, and a public hearing held on August 19, 1980 where no one appeared to testify with respect to the Manual.

9) Plaintiff LYNDA BLUMBERG is a resident of Pinellas County.

10) Plaintiff EL PASADO CONDOMINIUM ASSOCIATION, INC., is a Florida Corporation with its principal place of business in Pinellas County.

11) Plaintiff BLUMBERG was required to pay a $10.00 nonrefundable service charge and a $45.00 deposit, and Plaintiff EL PASADO was required to pay a $10.00 nonrefundable service charge and a $200.00 deposit in order to receive utility service.

12) As of August 31, 1992, the Pinellas County Water System held approximately 95,512 separate utility deposits in a total amount of $4,024,879.61.

13) In the five years preceding the filing of Plaintiffs' lawsuit on September 19, 1991, Defendant PINELLAS COUNTY earned approximately $1,040,624.00 of interest from utility deposits.

14) From October 1, 1991 through August 31, 1992, Pinellas County earned an additional $173,098.00 of interest.

15) On September 1, 1992, the Board of County Commissioners revised the deposit policy for utilities by enacting an ordinance which replaced its earlier policy.

16) Effective September 1, 1992, deposits will be held for two years only, with customers receiving a credit for interest on their bills.

This Court finds that Plaintiffs have sustained their burden of showing that no genuine issues of material fact remain in this dispute. Plaintiffs have carried that burden by offering extensive facts and deposition testimony, as well as affidavits. The only contested issues between the parties are, as a matter of law, whether a protected property interest existed and whether an unconstitutional taking occurred. The Court finds therefore the case is ripe for judgment as a matter of law under Rule 56(c), Federal Rules of Civil Procedure. Since cross-motions for summary judgment are before the Court, the Court will consider the arguments of both parties.

### WHETHER A PROTECTED PROPERTY INTEREST EXISTED

█ The Fifth Amendment of the Constitution of the United States states that no private property shall be taken for public use without just compensation. The Fifth Amendment is, of course, applied against the States through the Fourteenth Amendment. Plaintiffs allege that a "taking" without compensation occurred, and before this may be considered there must first exist a protected property right or interest.

As this Court previously stated in *Pope v. Clearwater*, property interests are not created by the United States Constitution, but by understandings or existing rules arising from independent sources such as state law. 767 F.Supp. at 1150; from *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). Defendant argues that utility customers had no property right in the interest, because neither Florida nor common law require interest to be paid on customers' security deposits. The Court does not find Defendant's argument persuasive.

Authority cited by Defendant shows that Pinellas County cannot be compelled to place

money from deposits into interest-bearing account. However, as Plaintiffs discuss in their memorandum in opposition to Defendant's motion for summary judgment, none of the cases Defendant relies upon dovetail with the issue before the Court, which asks whether the County, by investing customer deposits into interest-bearing accounts and then using the interest instead of returning it to customers, has engaged in an unconstitutional taking.

Defendant has relied upon four cases, the issue of which was whether the security holder should have invested funds into interest-bearing accounts. These cases are *Rogers v. Bucks County Domest Relations Section*, 773 F.Supp. 768 (E.D.Pa.1991); *United States v. Louisiana*, 446 U.S. 253, 100 S.Ct. 1618, 64 L.Ed.2d 196 (1980); *Paradis v. Second Avenue Used Car Co.*, 61 So.2d 919 (Fla.1952); and *Warner v. Harris Miami Beach, Inc.*, 219 So.2d 93 (Fla. 3d DCA 1969).

In addition, Defendant has relied upon *Spierer v. City of North Miami Beach*, 560 So.2d 1198 (Fla. 3d DCA 1990), in which the court states that it is not clear as to whether the city received interest from the utility accounts. The case is distinguishable, since the court dismissed for failure to state a cause of action for an unfair trade practice. Finally, Defendant cites *Flack v. Graham*, 461 So.2d 82 (Fla.1984), which is not applicable to the present case, as it addresses whether a state government is immune from pre-judgment interest on damages as a matter of sovereignty.

Having reviewed Defendant's authority, this Court finds nothing in state law to support Defendant's argument that no "property right" exists.

Plaintiffs argue that a property right exists, relying upon *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), and *Henkels v. Sutherland*, 271 U.S. 298, 46 S.Ct. 524, 70 L.Ed. 953 (1926). In *Webb's*, the United States Supreme Court overturned a ruling of the Supreme Court of Florida finding a state statute to be an unconstitutional taking in violation of the Fifth and Fourteenth Amendments of Constitution of the United States. The Supreme Court described how the stat-

ute allowed the clerk of the court to exact two tolls, the first being the statutory fee "for services rendered" and the second being the retention of the interest from the interpleader fund. 449 U.S. at 159–160, 101 S.Ct. at 449–450.

*Webb's* notes how the principal sum deposited in the court registry was plainly private property, and not the property of Seminole County. 449 U.S. at 162, 101 S.Ct. at 451. The Supreme Court examines what might possibly justify retention of the interest, and finds the interest not to be a fee for services. *Id.* The Court explains that it has been permissive in upholding governmental action when it might deny some beneficial use of private property in the interest of promoting general welfare. *Id.* at 163, 101 S.Ct. at 451. But *Webb's* distinguishes that instance from one where the burdens are unevenly borne by the public. *Id.* The Court analogizes Seminole county's use of interest from the interpleader fund to the appropriation of the use of private property in *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), where the Court found a "taking" in the Government's use of air space above the claimant's chicken farm.

As in *Webb's*, the deposit money collected by Defendant from utility customers is also private property, and not the property of Pinellas County. Defendant, similar to *Webb's*, has exacted two tolls, first in the form of a non-refundable service charge, and second by appropriation of the interest. Although Defendant contends that *Webb's* is decided under "narrow circumstances", this Court finds more factual similarities exist between the present case and *Webb's* than between the latter and its analogous case involving air space over a chicken farm. This Court does not agree with Defendant's argument regarding use of the interest as a "reasonable user's fee", for reasons that are discussed in the next section.

The Court finds Plaintiffs' reliance on *Webb's* persuasive. *Webb's* holds that "the earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property". 449 U.S. at 164, 101 S.Ct. at 452. Plaintiffs correctly assert that

under common law, the ownership of interest follows the ownership of principal, relying on *Himely v. Rose,* 9 U.S. (5 Cranch) 313, 3 L.Ed. 111 (1809).

Plaintiffs assert in addition that Florida Statutes § 679.207(2)(c) provide unless otherwise agreed, "any increase or profits" received by a secured party from collateral belongs to the debtor, and if the "increase or profits" is in the form of money, it must be either remitted to the debtor or applied in reduction of the secured obligation. Florida law follows common law precedents in this regard.

Defendant contends that water customers "agreed" to be bound by the terms of County's confiscatory ordinance, either by failing to protest the policy by attendance at a public meeting, or by signing up for the utility's services in the first place. This argument fails.

Under basic contract law there can be no contract without an offer and acceptance. Mutual assent is a condition precedent to formation of a contract, as cited by Plaintiffs in *Gibson v. Courtois,* 539 So.2d 459 (Fla.1989). As this Court previously mentioned, water is a necessity, not a luxury. In our society, even the most humble of dwellings within a municipality is expected to have piped-in running water. Although neither party mentions it, there are certainly local ordinances requiring water to be supplied to all residences in Pinellas County, in the interests of public welfare and sanitation. It is hard for this Court to see how a monopoly which provides a service that residents must, as a matter of law, consume, can argue that those same residents have "freely agreed" to partake of that service.

The record contains no evidence as to whether Plaintiffs or other utility customers ever received a copy of the Pinellas County Water System Policy Manual, and the Court notes that nowhere in the newspaper advertisements were the policies concerning retention of interest mentioned. The record contains no evidence of any written agreement between Plaintiffs and Defendant which would factually support Defendant's allegations of an agreement. Although the customer, by requesting service, agrees to abide by the rules and regulations of the water system, this does not mean that Defendant is at liberty to pass rules and regulations which violate constitutional protections of its customers.

This Court finds a protected property right existed in the interest generated by utility deposits, and as a matter of law that the deposit interest was the property of the utility customers. In addition, the Court finds that no agreement existed between the Plaintiffs and Defendant which would allow the County to take interest from deposits for its own use.

## WHETHER A TAKING OCCURRED

Defendant argues that Pinellas County's use of deposit interest is merely a "reasonable user fee" to reimburse the cost of a government service. The Court does not agree with Defendant's argument. As Plaintiffs state in their memorandum in opposition to Defendant's motion for summary judgment, utility customers already pay for the water they use each month. Nowhere in the record, whether in depositions, answers to interrogatories, or affidavits on file, has the Defendant made a showing of any specific costs paid by the interest from customer deposits, but not already included on customers' monthly itemized bills. This Court assumes that Defendant would have produced these facts if they had existed.

In addition, Plaintiffs have shown that they were required to pay a $10.00 non-refundable service charge to receive utility services. With approximately 95,512 utility customers as of August 31, 1992, non-refundable service charges at $10.00 per customer come out to $955,120.00, a sizable amount, all of which Pinellas County keeps to reimburse the costs of service. This Court finds, with an absence of contrary evidence presented by the Defendant, that any "reasonable user fee" is limited to revenues from the utility customers' non-refundable service charges and monthly billings.

Defendant alleges that the deposit policy of Pinellas County was enforced without discrimination. But this conclusory statement is not supported by the record, and, indeed,

is contradicted by deposition evidence of Defendant employee Timothy D. Wiley, Customer Service Manager for the Pinellas County Water System since 1975. Under Pinellas County's study, it noted that accounts with larger deposits were paying more than their fair share of water system expenses.

Pick Talley, Director of the Pinellas County Water System, states by affidavit that "the requirement to pay the deposit was uniformly applied". But a uniform requirement to **pay** a deposit does not mean that the money collected was not used in a discriminatory way. It is clear from the County's own study that customers with larger deposits have been, prior to September 1, 1992, subsidizing accounts with smaller deposits.

Defendant contends that because the use of the interest "benefits" the utility customers that no unconstitutional taking has occurred, as the benefits of reduced rates equate to customer compensation. This argument fails because, as discussed above, the Pinellas County customers with larger deposits have been subsidizing those with smaller deposits. It is clear to the Court that any benefit thus received has not been in proportion to the taking that occurred. The Fifth Amendment's guarantee of just compensation for a governmental taking "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163, 101 S.Ct. 446, 452, 66 L.Ed.2d 358 (1980); from *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

Plaintiffs argue that because the County did not raise water rates with its new deposit policy enactment, Defendant's allegations of a "beneficial taking" fail.

Pick Talley states by affidavit that because of the recent changes in deposit policy, the Pinellas County Water System will lose approximately $200,000 per year in revenue. Mr. Talley also states that the next time he reviews rates and charges of the water system for the Board of County Commissioners, the loss of revenue and increased expenses

from the deposit policy changes will be "a factor" in his recommendations. The inference here is that Pinellas County will possibly have to increase charges to make up for the lost interest revenue. Defendant would have the Court believe this supports a showing of a "beneficial use".

But on this point neither Plaintiffs' nor Defendant's arguments are persuasive. It is entirely conceivable to the Court that Pinellas County may be able to temporarily change its deposit policy without an immediate increase to its customers, and yet still need to increase revenues in the future. Nonetheless, revenue improperly taken by the County cannot stand, despite whatever losses may occur in the future. Whether Pinellas County has chosen to change its utility deposit system with or without additional increases to its customers has no bearing on whether its previous deposit policy represented an unconstitutional taking, because any customer benefits were unfairly distributed.

### CONCLUSIONS OF LAW

"A State, by *ipse dixit*, may not transform private property into public property without compensation." *Webb's*, 449 U.S. at 164, 101 S.Ct. at 452. The Court finds deposition and affidavit evidence from employees of Defendant shows that the County's water deposit policy was applied in a discriminatory way which required customers with larger deposits to unfairly bear the burden of water system costs of those paying smaller deposits.

This Court finds, as a matter of law, that a protected property interest existed in the utility customer deposits collected by the Pinellas County water system. This Court further finds that an unconstitutional taking occurred when the Defendant failed to return interest to utility customers.

### CONCLUSION

In conclusion, this Court finds as a matter of law that Defendant has converted Plaintiffs' money for its own uses, depriving Plaintiffs of property without due process of law, in violation of the Fifth and Fourteenth

Amendments of the United States Constitution. This Court also finds that Plaintiffs have been damaged by Defendant's failure to pay over to them interest accrued on deposits prior to September 1, 1992.

"When the Well's dry, we know the Worth of Water".[3] Having thoroughly reviewed the record in this case, the Court grants summary judgment in favor of the Plaintiffs.

Accordingly, it is

**ORDERED** that Plaintiffs' motion for final summary judgment is **granted,** and Defendant's cross-motion for summary judgment and motion to dismiss are **denied.**

**DONE and ORDERED.**

3. From *Poor Richard's Almanack,* published from 1733 to 1758, by Benjamin Franklin.