**Mathias L. TARI, also known as Mat Tari, and Helen A., husband and wife, Plaintiffs,**

v.

**COLLIER COUNTY, a political subdivision of the State of Florida, et al., Defendants.**

No. 89–246–CIV–FTM–17(D).

United States District Court, M.D. Florida, Ft. Myers Division.

Feb. 28, 1994.

Opinion Denying Reconsideration March 28, 1994.

Kenneth Edward Apgar, Tampa, FL, David Paul Persson, Davis, Persson & Smith, Sarasota, FL, David Allen Theriaque, Robert C. Apgar, Apgar & Theriaque, Tallahassee, FL, Robert Neal Harrison, Kanetsky, Moore

& DeBoer, P.A., Venice, FL, for Mathias L. Tari and Helen A. Tari.

Mathias L. Tari, pro se.

David Edward Bryant, Kenneth B. Cuyler, Collier County Attorney's Office, Naples, FL, Gregory W. Hootman, O'Riorden, Mann, Hootman, Ingram & Dunkle, P.A., Sarasota, FL, for Collier County, Burt L. Saunders, Max A. Hasse, Jr., Richard S. Shanahan, Michael J. Volpe, P. Anne Goodnight, Charles M. Andrews, Darlene M. Connelly, Timothy J. Constantine, Mark Lamoureux, Michael Pedone, Mark Strain, Jackie Williams, Nick J. Varie, Lionel G. L'Esperance and Monte Lazarus.

## ORDER ON REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on a Report and Recommendation ("R & R") issued by Magistrate Judge George Swartz on November 3, 1993 (Docket No. 176). Plaintiffs, Mathias L. Tari and his wife,[1] filed a complaint on October 10, 1989, against Collier County, Collier County Commissioners in their official capacities, and members of the Collier County Code Enforcement Board in their official capacities (Docket No. 1) for an unconstitutional taking of their property without compensation. Collier County filed notice of removal to this Court on November 7, 1989 (Docket No. 1). This Court, under authority of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 6.02, Local Rules of the Middle District of Florida, referred this matter to Magistrate Judge Swartz for an evidentiary hearing on the issue of ripeness (Docket Nos. 149 and 154). After conducting a hearing on the issue, Magistrate Judge Swartz recommended that the Plaintiffs' complaint be considered ripe for consideration by this Court.

■ Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, any party may file written objections to the Magistrate's findings within ten days after being served with a copy of the R & R. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (en banc). The district judge shall make a *de novo* determination in accordance with the rules and after review of any written objections. 28 U.S.C. § 636(b)(1)(B); *Gropp v. United Airlines,* 817 F.Supp. 1558, 1560 (M.D.Fla.1993). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). Defendants filed a timely objection with this Court (Docket No. 177), and this Court has reviewed the findings of fact set forth in the R & R.

## FACTS

The record of this case is extensive and complex; thus, the facts will be limited to those necessary to determine the issue of ripeness.

Plaintiffs ran a wholesale and retail nursery business in Collier County for 7½ years. On February 14, 1989, Plaintiffs were given a Notice of Violation of Collier County's zoning ordinances, at which time they were advised to cease all commercial operations and to remove all signs. Attached to the Notice of Violation was a written notice of Plaintiffs' right to appeal (Transcript of Hearing, p. 47). Plaintiffs contacted several individuals within the Zoning Department, including: Investigator William Smith; Richard Clark, Code Enforcement Director; and then-county attorney Brenda C. Wilson. Each individual advised Plaintiffs that they had rights of appeal, and that they should discuss the interpretation of the zoning ordinance with Mr. Kenneth Baginski, the Zoning Director (Transcript of Hearing pp. 47, 63–64). Plaintiffs chose not to appeal the Notice of Violation, nor did they choose to discuss the interpretation of the ordinance with Mr. Baginski (Transcript of Hearing p. 64). Plaintiffs filed this lawsuit in State Court, and Defendants removed it to this Court.

Mediation was ordered September 10, 1990 (Docket No. 22), and Plaintiffs and Defendants agreed to and signed a Memorandum of Understanding on February 7, 1991 (Docket No. 35). The essence of the Memo-

---

1. Mr. Tari, as personal representative of his wife's estate, now represents both interests.

randum was that Plaintiffs would continue the operation of their nursery as a wholesale business, but would cease on-premise retail sales (Docket No. 35). Thereafter, Plaintiffs successfully moved to strike the Memorandum of Understanding, and proceeded with this lawsuit (Docket Nos. 40–43, 47, 51, 58–64, 69). Subsequently, pursuant to a Preliminary Pretrial Conference (Docket No. 149), Magistrate Judge Swartz held an evidentiary hearing on the issue of ripeness on September 14, 1993 (Transcript of Hearing/Docket No. 169).

Magistrate Judge Swartz found that the issues raised are ripe for adjudication by this Court because the Plaintiffs had no viable state law remedies [2] and because any attempt to pursue their administrative remedies would be futile.[3]

*Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) controls this issue. In *Williamson,* the Supreme Court held that a regulatory taking of property is not ripe for review on the merits until the plaintiff demonstrates: 1) obtainment of a "final decision regarding the application of the zoning ordinance and subdivision regulations to its property," and 2) that he has "utilized the procedures ... for obtaining just compensation."

## PLAINTIFFS' ARGUMENTS

In support of the R & R, Plaintiffs argue: 1) that the Notice of Violation given by Investigator Smith was a final decision of the Zoning Commission; 2) that Investigator Smith's final decision forced Plaintiffs to close their nursery business immediately or face fines and/or imprisonment; 3) that an adverse decision to one of Plaintiffs' neighbors regarding a similar situation left Plaintiffs no choice but to close their business; and 4) Plaintiffs suffered ascertainable impact and damages because they were forced to shut down their existing business, as op-

posed to being prevented from developing land.

## DEFENDANTS' ARGUMENTS

In opposing the R & R, Defendants argue: 1) the Magistrate Judge's reliance on *Morales* and *Corn* are misplaced because Plaintiffs' complaint does not deal with rezoning or a moratorium on development; rather, Plaintiffs challenge the validity of the zoning ordinance as applied to their property; 2) Florida law requires application for a variance or exception before a party may seek judicial review;[4] and 3) Plaintiffs failed to utilize the provided state or administrative remedies.

## DISCUSSION

Plaintiffs first contend that the Notice of Violation given by Investigator Smith constituted a final decision of the Zoning Board. However, this contention is analogous to saying that an arrest by a police officer constitutes conviction. In light of the fact that Plaintiffs were made aware of their right to appeal, both in writing and verbally on numerous occasions, they clearly had not received a final decision from the regulatory agency regarding application of the ordinance to their property. Whether Plaintiffs chose to utilize the available remedy is the sole issue here, not the reasons why they did not choose to do so. Thus, Plaintiffs' arguments that they were forced to shut down their business because of the Notice, the adverse decision against their neighbor, and the threat of fines and/or imprisonment, are meritless. Plaintiffs distinguish the *Williamson* case as applying to regulation of land use prior to development, whereas they suffered ascertainable impact and injury because they were forced to shut down an existing business. However, this argument does not cure Plaintiffs' failure to utilize the administrative remedy, which is clearly required by the *Williamson* decision.

---

**2.** Magistrate Judge Swartz relied on *Lee County v. Morales,* 557 So.2d 652 (Fla. 2d DCA 1990) and *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir. 1987).

**3.** Magistrate Judge Swartz relied on *Eide v. Sarasota County,* 908 F.2d 716 (11th Cir.1990).

**4.** *Wood v. Twin Lakes Mobile Home Village, Inc.,* 123 So.2d 738 (Fla. 2d DCA 1960).

Furthermore, the Notice of Violation served on Plaintiffs specifically provides: "anyone who fails to comply shall upon conviction be fined or imprisoned or both" (Plaintiffs' exhibit # 1) (underline added). Because Plaintiffs did not receive a final decision by the regulatory agency, and were not convicted in any court, they were in no danger or fines or imprisonment when they shut down their business.

Additionally, on September 19, 1989, approximately three weeks before Plaintiffs commenced this lawsuit, County Attorney Kenneth B. Cyler sent a notice to Plaintiffs of his intention to schedule a hearing before the Code Enforcement Board before November 1989 (Docket No. 1, Exhibit J). Clearly, the regulatory agency responsible for the Notice of Violation had not reached a final decision.

Finally, Plaintiffs argue that because their file had been turned over to the county attorney, they had no further remedy with the zoning officials. However, this argument is negated by the notice from County Attorney Cyler regarding his intention to schedule a hearing before the Code Enforcement Board, and by the fact that zoning officials entered into mediation with Plaintiffs which resulted in a settlement. Clearly the Zoning Commission still had authority over this case and any attempt Plaintiffs made to reconcile with the County would not be futile.

Magistrate Judge Swartz also addressed available state remedies, finding that Florida did not recognize a claim for money damages for regulatory takings and thus Plaintiffs had no viable State remedy. Defendants, however, respond with numerous cases to the contrary (Docket No. 180). This Court concurs with Defendants, and finds *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)[5] dispositive. In *First English*, the United States Supreme Court held that a state must provide just compensation where a land regulation causes a temporary taking of property. Thus, regardless of whether or not Florida courts had addressed the issue on point, had it been successfully challenged, the U.S. Supreme Court decision mandated the award of money damages. Thus, Plaintiffs had an adequate state remedy for compensation.

The application of controlling law to the facts of this case clearly indicate that Plaintiffs did not receive a final decision from the regulatory agency, nor did they exhaust any available administrative or state remedies even though they had every opportunity to do so before proceeding with this action.

Accordingly, this Court **DECLINES** to adopt the Report and Recommendation dated November 3, 1993. It is **ORDERED** that Plaintiff's complaint be **dismissed** in accordance with this decision; all other pending motions be **denied** as moot; and the Clerk of the Court be **directed** to enter judgment pursuant to this order.

**DONE** and **ORDERED**.

## ORDER ON MOTION TO RECONSIDER AND VACATE FINAL JUDGMENT

THIS CAUSE is before the Court on Plaintiffs'[1] motion for reconsideration of this Court's order, dated February 28, 1994, dismissing their complaint as not ripe for review (Docket No. 197). The relevant facts and procedural history of the case are set out in that order, and will not be repeated here.

### DISCUSSION

■ Plaintiffs request that this Court reconsider its order of dismissal, and vacate final judgment, because Plaintiffs' claim is for inverse condemnation, rather than a regulatory taking. An inverse condemnation claim is available for a regulatory taking. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Plaintiffs contend, however, that the *Williamson* finality requirement, *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) does not apply to inverse condemnation, and as such was misapplied by this Court. Thus,

---

5. Two (2) years before Plaintiffs filed their complaint.

1. Mr. Tari, as personal representative of his wife's estate, now represents both interests.

the *Williamson* requirements as applied to an inverse condemnation takings claim are herein reviewed.

■ *Williamson* requires that the "initial decision-maker has reached a definitive position on the issue that inflicts an actual, concrete injury," and that no adequate state remedy, such as inverse condemnation, is available to redress the injury. *Id.* Plaintiffs, in their motion for reconsideration, strongly contend that the "initial decision-maker" requirement is distinct from the exhaustion requirement for regulatory takings. Case law supports this position. For a regulatory taking claim to be ripe, claimants must exhaust their administrative remedies, but the requirement is not as strict for inverse condemnation. As explained by the Court in *Williamson:*

> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Id.* at 192, 105 S.Ct. at 3120.

A formal administrative hearing is not required before a claim for inverse condemnation may lie, nor is there a requirement of appeal of the definitive position causing the injury. *Bowen v. Florida Dept. of Environmental Regulation,* 448 So.2d 566 (2d DCA 1984); *aff'd,* 472 So.2d 460 (1985). Thus, to the extent that this Court's previous order enforces the requirements for a regulatory taking rather than the requirements for inverse condemnation, it stands corrected.

■ However, the second prong of the *Williamson* test—that no adequate state remedy exists to redress the injury—must still be met. On that issue, this Court remains firm. In *First Lutheran,* 482 U.S. 304 at 315, 107 S.Ct. 2378 at 2385–86, the Supreme Court held that when a state regulation, such as the zoning ordinance at issue here, temporarily deprives a property owner

of all use of his property, the state must provide compensation under the Just Compensation Clause. Since that case was decided two years before Plaintiff brought his claim, had he pursued and proven his inverse condemnation allegation in a State Court, compensation would have been mandated. Furthermore, state law is the dispositive and appropriate source for determining whether an adequate state remedy exists.

Plaintiffs rely heavily on *Blumberg v. Pinellas County,* 836 F.Supp. 839 (M.D.Fla. 1993), for the proposition that inverse condemnation is not an available remedy in Florida for a regulatory taking. However, in *Blumberg,* this Court analogized a utility company's refusal to pay their customers accrued interest on utility deposits to a regulatory taking. The language relied on by Plaintiffs is merely *dicta,* not a specific holding of the case. Furthermore, additional research would have revealed other, fact-specific cases, in which this court has also discussed Florida's acceptance of inverse condemnation claims for regulatory takings. *See, e.g., Fields v. Sarasota–Manatee Airport Authority,* 755 F.Supp. 377 (M.D.Fla.1991). Both *Blumberg* and *Fields* were decided several years after Plaintiffs filed their claim, thus they cannot possibly contend that these opinions were dispositive of their allegation that no adequate state remedy exists here.

Additionally, the Eleventh Circuit has noted that Florida recognizes claims for inverse condemnation for regulatory takings. "The Florida courts have recognized that under *First Lutheran Church* property owners have the right to bring reverse condemnation proceedings seeking compensation for regulatory takings." *Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.1991). In deciding this issue, this Court must review all pertinent case law, not simply the dicta in one case.

As noted above, state law is the proper source for determination of the question as to whether Plaintiffs had an adequate state remedy. As *Bowen* indicates, the Second District Court of Appeal recognizes inverse condemnation. Furthermore, the Florida Supreme Court affirmed the DCA opinion in

978

*Bowen,* and adopted it as its own. *Florida Dept. of Environmental Regulation v. Bowen,* 472 So.2d 460 (Fla.1985). *See also Hancock v. Piper,* 219 So.2d 746 (2d DCA 1969). These cases were decided, and available, well before Plaintiffs' claim arose. "Absent the state's denial to a property owner of just compensation, there can be no cognizable harm to any federal constitutional right." *Lake Lucerne Civic Assoc. Inc. v. Dolphin Stadium Corp.,* 878 F.2d 1360 (11th Cir. 1989).

Additionally, Florida Statute 253.763(2) specifically provides for proceeding directly to circuit court on inverse condemnation actions following final agency action. *Bowen,* 448 So.2d at 568. Finally, at the beginning of this dispute, Plaintiffs abandoned their remedy in the county misdemeanor court. Thus, given the overwhelming state law favoring inverse condemnation claims, Plaintiffs cannot prevail on the instant ripeness issue in federal court when they have not utilized adequate state court remedies. Accordingly, it is

**ORDERED** that Plaintiffs' motion to reconsider and vacate final judgment (Docket No. 197) be **denied;** and motion for oral argument be **denied.**

**DONE** and **ORDERED.**